## No. 15,959.

### Colorado School of Mines *v.* Neighbors et al.

(203 P. [2d] 904)

Decided March 7, 1949.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. George K. Thomas, Assistant, Mr. Charles F. Cory, Assistant, for plaintiff in error.

Mr. JAMES J. PATTERSON, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

ORIGINALLY this was an action by Colorado School of Mines, hereinafter identified as the School, against W. Doy Neighbors and Mary Doe Neighbors, husband and wife, for certain rentals alleged to be due from them. That feature of the litigation, however, was amicably adjusted in the trial court and is not considered on this review. What does require our attention grows out of a counterclaim by defendant in error W. Doy Neighbors against the School for damages, in which his wife, the other defendant in error, is not interested. The counterclaim is based on the alleged breach of a contract of employment between Neighbors and the School, evidenced, as presently will be stated, and on which he enjoyed judgment below in the sum of $1,148.61.

It appears that Neighbors received a letter from the School, in which it was stated that he had been appointed "director of physical education for the regular or academic school year at a salary of $2,750.00 to be paid in twelve equal monthly installments * * *, beginning as of September 1, 1945, and ending August 31, 1946." He accepted the appointment, entered upon the discharge of the duties of the position, and, without complaint or criticism in relation to his services, as such, he served until February 9, 1946, when, pursuant to a resolution of the board of trustees of the School, his employment as director of physical education was terminated, and, as stated in the notice of dismissal, he was to be paid "that proportion of your full annual salary which your period of service during the school year 1945-46 up to February 9, 1946, bears to the full school year." On that basis he was paid the sum of

$1,601.39. For the remainder of the term of his employment, and but for such discharge Neighbors would have earned $1,148.61 additional, which was the sum the jury found constituted his damages, and for which he was given judgment, as already stated.

·Counsel for the School make two contentions: One, that since Neighbors "elected to take outside work," it "acted within its power and authority in terminating the * * * employment contract." Two, that, in any event, Neighbors earned otherwise during the period he was not permitted to discharge the duties of his contracted employment as much or more than the sum of his alleged loss, hence, as argued by counsel for the School, 'the result is zero."

The letter of dismissal does not assign the reason therefor, but other evidence indicated that it was premised on the fact that during hours not in conflict with those to be devoted to his duties as physical director, Neighbors was employed as "manager of a cocktail lounge in the LaRay Hotel in Golden." He was advised that, "You must give up your employment in connection with the dispensing of liquors if you wish to remain on the Faculty at this institution." Neighbors freely admitted the extra employment, but maintained, nevertheless, that since he had not failed in the discharge of his contractual obligation, validity did not attend the order of dismissal in the sense that thereby he would be despoiled of the compensation provided in the contract of his employment. It is important to note that Neighbors was not a stranger on the campus of the School. On the contrary, it appears that beginning in September, 1937, and until February 9, 1946, when he was discharged, as we have seen, he had been employed by the School, first as assistant coach, second, as coach, and from September 1, 1945 to August 31, 1946, as contracted, but terminated earlier, as already stated, as director of physical education. A further significant fact, although not originally known by the board of trustees

of the School, is, that, at the time Neighbors and the School entered into the contract of his reliance, he was engaged in the activity emphasized by the School in justification of its order of dismissal.

1. It is understandable that the board of trustees of the School would not look with favor on Neighbors' employment in a cocktail lounge in the very midst of the School's activities, even though such employment did not conflict with the hours of his contractual employment, or otherwise impair his services in that regard. Since Neighbors would not consent to desist in the cocktail employment, the trustees of the School worked a separation of what they considered an intolerable situation, and dismissed Neighbors from the faculty. None will say, we think, that moral justification did not attend the action of the trustees in the premises. But did legality attend? The School had the power to exclude Neighbors from the service contemplated in the contract of his employment, which it exercised, as already stated. But does it follow that its formal order of dismissal worked legal termination of its contractual obligation to pay salary for the term, and in the sum set forth in the contract? We think not. "When a servant is discharged without a sufficient legal excuse before the expiration of his term, * * * he may defer suit until the end of the term [as here], and sue for the actual damage he has sustained, which, however, can in no case exceed the wages for the entire term." *Saxonia M. & R. Co. v. Cook,* 7 Colo. 569, 4 Pac. 1111. At no time of importance here was it illegal to serve or be employed in dispensing liquors. Art. XXII, Colo. Const.; c. 89, '35 C.S.A., and amendments thereto; *Golden v. People ex rel.,* 101 Colo. 381, 74 P. (2d) 715. Considering the foregoing, and that the contract of employment involved here contained no provision in relation to how Neighbors should employ his time when not engaged in his contractual duties, nor that he should not engage in dispensing liquors during such time, plus the fact that in

relation to the discharge of his duties under the contract there was no complaint, we think that in the sense of its liability for salary as contracted, the School breached its obligation.

2. We proceed now on the claim of the School's counsel that for the period between February 9, 1946, the date of his dismissal, to September 1, 1946, when by its terms the contract of employment would have terminated, Neighbors earned otherwise, and received, a sum in excess of his adjudged recovery. Concededly for the period involved, as our study of the record convinces, Neighbors, proceeding in other employment, earned and received money greatly in excess of the sum adjudged in his favor. In operating the "Golden Nugget Cafe" Neighbors testified that through June, July and August, 1946, he enjoyed a net income of "around $1,500," and he engaged in other activities to his considerable profit. The entire story in mind, Neighbors suffered no substantial damage.

3. Since there was breach of the contract, however, and regardless of what Neighbors otherwise earned and received during the period of his enforced separation from his employment with the School, he is "entitled to nominal damages and costs." *Ryan v. School District,* 68 Colo. 370, 189 Pac. 782. This Colorado case, with authorities from other jurisdictions, is cited in support of the following paragraph from volume 56, Corpus Juris Secundum, page 471, section 58, paragraph d: "Although an employee fails to show substantial damage, he can recover at least nominal damages for a breach of contract by the employer, and this has been held to be true even though the salary earned in substituted employment is the same as that contracted for or even though he is benefited by the discharge."

Let the cause be remanded, and on receipt of our formal remittitur the trial court will vacate its former judgment as to sum, and in lieu thereof order recovery

in a nominal sum, together with costs, as originally adjudged.

Mr. Justice Alter does not participate.