651 P.2d 1037

**BOARD OF EDUCATION OF ALAMOGORDO PUBLIC SCHOOLS DISTRICT NO. 1, Plaintiff-Appellant,**

v.

**Lyman JENNINGS, Defendant-Appellee.**

**No. 5510.**

Court of Appeals of New Mexico.

Sept. 2, 1982.

Overstreet & Sandenaw, P. C., Alamogordo, for Bd. of Educ. of Alamogordo Public School District No. 1.

Durrett, Jordon & Grisham, P. C., Alamogordo, for Lyman Jennings.

Jeff Bingaman, Atty. Gen., John F. Kennedy, Asst. Atty. Gen., Santa Fe, for State of N. M.

William McEuen, Santa Fe, for New Mexico State Bd. of Educ.

## OPINION

NEAL, Judge.

Lyman Jennings, an assistant principal at Alamogordo Mid-High, was fired by the Alamogordo School Board (Local Board) for carrying on an extramarital affair with a secretary in the Mid-High office. Jennings appealed to the State Board of Education, § 22–10–20, N.M.S.A.1978, which reversed the Local Board. The Local Board appeals.

We affirm.

The romance began in late 1979, and died with the coming of spring. The secretary filed a complaint with the Local Board accusing Jennings of sexual harassment. After a hearing before the Local Board Jennings was fired.

The Local Board based its termination on three grounds:

1. Sexual harassment and immoral conduct (the extramarital affair);

2. Gross inefficiency (sexual harassment of other secretaries);

3. Gross inefficiency (knowledge of the above had reached others, adversely affecting Jennings' ability to do his job).

A de novo hearing was held by the State Board. Section 22–10–20, supra. The hearing officer wrote a twenty-six page report containing a detailed fact summary and the legal issues presented. He concluded that the sexual harassment charges could not stand because Jennings was not given a work conference. He concluded that charge number three, gross inefficiency, was proven by a preponderance of the evidence.

The State Board reviewed the report. It agreed that the sexual harassment charge could not stand because no work conference was given. It did not agree that charge number three, gross inefficiency, was proven by a preponderance of the evidence, and reversed the Local Board. The State Board also refused to allow the Local Board to discharge Jennings from a contract for the following school year, 1980–81. The State Board requested revised findings and conclusions from the hearing officer. This was done, and the State Board adopted the revised findings and conclusions.

Appellant Local Board raises four issues:

1. The State Board should have taken new evidence when it rejected the findings and conclusions of its hearing officer.

2. State Board erred in concluding that appellant failed to prove, by a preponder-

ance of the evidence, that good and just cause existed to support the firing.

3. Concerning sexual harassment, Jennings was not entitled to work conferences.

4. Jennings was not entitled to a 1980–81 contract.

■ Our review of the State Board's decision is limited to determining whether it is:

1. arbitrary, capricious or unreasonable;

2. not supported by substantial evidence; or

3. otherwise not in accordance with law.

See § 22–10–20(J), N.M.S.A.1978; *New Mexico State Bd. of Ed. v. Stoudt,* 91 N.M. 183, 571 P.2d 1186 (1977).

1. *The State Board need not have taken new evidence.*

■ When the State Board rejected the findings and conclusions of its hearing officer, without taking new evidence, was it acting "in accordance with law?" The answer is "yes."

Local Board contends that the State Board cannot summarily reject the hearing officer's findings and conclusions, without taking new evidence, when the hearing officer's findings and conclusions are supported by substantial evidence. It contends that the hearing officer was in the best position to evaluate the credibility of the witnesses, and deference must be given to the hearing officer's decision. While this may be true, the State Board is not bound by the hearing officer's recommendations; it may wholly alter the recommendations of its hearing officer. *Board of Education v. New Mexico State Bd. of Ed.,* 88 N.M. 10, 536 P.2d 274 (Ct.App.1975).

Section 22–10–20(C), N.M.S.A.1978, provides that the hearing officer shall submit his report, and "thereafter the state board shall render a final decision in writing." Section 22–10–20(I), N.M.S.A.1978 provides:

The state board shall render a written decision affirming or reversing the action of the local school board or the governing authority of the state agency. Such decision shall contain findings of fact and conclusions of law.

Neither of these subsections contemplate an additional de novo hearing by the State Board after one has already been held. To require an additional hearing would unnecessarily burden the administrative scheme created by the legislature.

The Local Board had a fair opportunity to present its case, and there is no indication that its presentation would be any different at another hearing. The report of the hearing officer thoroughly presented the facts and legal issues. The State Board was capable of reviewing the report and making a decision based upon it.

Finally, Local Board's reliance on *Bertrand v. New Mexico State Board of Education,* 88 N.M. 611, 544 P.2d 1176 (Ct.App. 1975), *cert. denied,* 89 N.M. 5, 546 P.2d 70 (1976), and *Board of Education, supra,* is misplaced. Neither case holds that the State Board, in rejecting its hearing officer's recommendations, must take new evidence.

*Board of Education, supra,* holds that the State Board is not compelled to follow the Local Board's decision even if the Local Board's decision is supported by substantial evidence. *Bertrand, supra,* holds that the State Board *may* take new evidence if it wishes. *Bertrand* does not hold that the State Board *must* take new evidence.

2. *The State Board did not act unreasonably in concluding that Local Board did not prove, by a preponderance of the evidence, that good and just cause existed to support the firing.*

The Local Board's evidence showed that Jennings and the secretary had an extramarital affair which began in the latter part of 1979; that she eventually became pregnant and told him so in March 1980; and that she wrote her letter of complaint on March 26, 1980, after he told her he did not wish to be involved in the situation.

Jennings' evidence showed that the relationship never went beyond romantic fantasy, and attacked the secretary's credibility.

The secretary separated from her husband in 1979 and moved into her own apart-

ment. She instituted divorce proceedings. Jennings, married, had one daughter, and was in charge of attendance and disciplinary problems. The secretary was in charge of attendance, so the two often worked together. They began going to lunch, and he often gave her rides home from school.

The secretary testified that they frequently had intercourse, usually at her apartment, but at least once in the Home Economics Department when school was not in session. Jennings denied this. Love notes were introduced into evidence. The notes, while not explicitly sexual, suggest that the relationship had progressed beyond romantic fantasy.

Besides writing her letter of complaint, the secretary wrote a letter to Jennings' wife, and a letter to Jennings' daughter. Jennings' evidence showed that, after the letter of complaint, the secretaries in the Mid-High office leaked rumors. These rumors stated that the two were having an affair, had had sex on school grounds, and the secretary had become pregnant.

The Local Board's evidence showed that Mrs. Jennings told some friends, including her next door neighbor, about the affair; the neighbor told her son, who "may have told a friend" at Mid-High about it.

Jennings was suspended April 16, 1980. It is difficult to tell how widely the rumors had circulated prior to the suspension, and the source of those rumors. The suspension added fuel to the fire, and the affair became common knowledge among both students and staff.

At the hearing before the Local Board each side launched an attack on the other's credibility. The Local Board brought out inconsistencies between a deposition Jennings gave in July 1980 and his testimony before the Local Board.

Jennings presented evidence that the secretary had twice been convicted of shoplifting, and was subject to two bench warrants for failure to appear on two undisclosed criminal charges.

The Local Board presented a polygraph examiner who testified that the secretary was truthful when she stated that she had had intercourse with Jennings, including at least once on school property. The examiner also stated that she was truthful when she stated that she had not had intercourse with anyone other than Jennings during the period in which her child, born in November 1980, was conceived. Jennings countered with a psychologist who testified that polygraph tests are not reliable. The psychologist also testified that the secretary appeared to be a sociopathic personality type, which includes a readiness to lie to suit the sociopath's subjective emotional needs.

The hearing officer had the unenviable task of arriving at the true story. His job was made more difficult because the secretary did not testify in person at the de novo hearing. She had testified before the Local Board, and a tape was made. By the time the de novo hearing took place the secretary had moved out of state and was unavailable. Thus, the hearing officer heard only her taped testimony and could not observe her demeanor.

Jennings, as a certified school administrator, could not be fired unless he had breached his employment contract or "other good and just cause" existed. The Local Board's theory was that the affair was immoral and therefore "good and just cause" existed to support the firing.

"Good and just cause" is discussed in *Stoudt, supra* :

The words "for any other good and just cause" have no reasonably defined meaning in the law. These words do not allow the State Board to revoke a teacher's certificate for any reason that is not related to the purposes of the Certified School Personnel Act, which purpose is to protect the public against incompetent teachers and to insure proper educational qualifications, "personal fitness" and a high standard of teaching performance. *Amador v. New Mexico State Board of Education,* 80 N.M. 336, 455 P.2d 840 (1969).

While this refers to certified teachers, this policy applies to certified administrators, as well.

■ In *Stoudt, supra,* our Supreme Court refused to promulgate a test for immorality, holding that the facts of the case control:

> *We decline to promulgate guidelines as to what constitutes immoral conduct that would be good and sufficient cause for discharge of a teacher.* We decide this case solely upon the narrow confines of the facts developed here.

The burden of proving sufficient cause is on the Local School Board. *Stoudt, supra.*

The Local Board fired Jennings because of sexual harassment, the affair, and because knowledge of the affair had reached others Jennings lost the respect necessary for him to perform his duties.

The sexual harassment charge was set aside by the hearing officer because improper procedure had been followed. The State Board affirmed. We agree and discuss this issue in point three of this opinion. We consider here the affair and the effect on Jennings' work performance.

The affair raises a question of immorality, and knowledge of the affair raises a question of unsatisfactory work performance.

■ The State Board is an administrative agency created by Article XII, Section 6 of the N. M. Constitution to determine policy and manage the public schools. It has superintending control over the local school boards. *See generally* § 22–2–1, N.M.S.A. 1978 and § 22–2–2, N.M.S.A.1978. Deciding whether or not an administrator is fit to perform his duties is a question of policy, and we will not alter the State Board's decision unless we are convinced it is unreasonable, not supported by substantial evidence, or not in accordance with law. *See* § 22–10–20(J), *supra.*

■ Based upon the record before us we cannot say the State Board's decision reinstating Jennings is unreasonable, not supported by substantial evidence, or not in accordance with law.

The immorality charge was primarily based upon the theory that sexual intercourse had occurred on school property. The State Board could reject this evidence. First, the only evidence was the secretary's statement that it happened. She had two convictions for shoplifting, a crime involving dishonesty. There were two outstanding bench warrants for her failure to appear on two undisclosed criminal charges. While her polygraph test indicated she was truthful when she said they had sex on school property, a clinical psychologist stated that he did not consider polygraph tests to be reliable, particularly when the subject is a sociopath. In the psychologist's opinion, the secretary was a sociopath, and would readily lie to suit her subjective emotional needs. Second, the State Board could discount her testimony because it was tape recorded. Tape recorded testimony is admissible, however, the circumstances here lessen its probative value. The secretary's charges, if believed, could put a man out of work, yet her demeanor could not be observed. Moreover, the Board would have been justified in concluding that, as a scorned lover, she would have a powerful motive to lie in order to "fix" Jennings. Thus, the State Board was not acting unreasonably in refusing to believe all of the secretary's story.

Without proof of sexual intercourse on school property the Board was left with evidence of an adulterous affair. The State Board could have believed Jennings protestations of innocence, but, upon our reading of the record, we believe that the State Board accepted that an affair took place and, as a matter of policy, declined to fire Jennings for having this affair. It is within the province of the State Board to decide that a private affair between consenting adults is not "good and just cause" to fire an employee. There are those who would disagree, but that is not the question. The question is whether this conclusion is unreasonable, and, in this day and age, we cannot say that it is.

The Local Board also claimed that widespread knowledge of this affair undermined

respect for Jennings to the point where he could not do his job.

Mid-High is made up of ninth and tenth graders who are roughly between the ages of 14 and 16. Jennings was in charge of attendance and discipline. The Local Board presented an apparently model student who said that he lost respect for Jennings, and that other students had also lost respect for him.

A faculty member testified that student conversations she overheard indicated a generally disrespectful attitude toward Jennings. She also stated that when she heard of other staff members having affairs she had lost respect for them. This was the extent of the evidence supporting the Local Board's assertion that Jennings could not do his job.

There was evidence going the other way. A clinical psychologist who had extensive experience counseling youths in the Mid-High age group testified that students of that age, 14 to 16, are past the developmental stage where they would be overly influenced by adult conduct. He stated that they had reached the age where they are capable of independent judgment, and would not necessarily be adversely influenced by Jennings' conduct. Because most students would not encounter an administrator very often, as opposed to a teacher, he concluded that information of the affair would not significantly impair Jennings' ability to do his job. Jennings also called a teacher who testified that because of personality conflicts certain teachers would not like him in any event.

The hearing officer, in his original findings, felt that Jennings could not do his job effectively. The State Board disagreed. In view of the evidence presented the State Board was not acting unreasonably in determining that the Local Board failed to meet its burden of showing unfitness. The Local Board's evidence was based upon the testimony of two witnesses who stated that respect for Jennings had been undermined. Balanced against this there is substantial evidence, presented by the psychologist, to support the State Board's conclusion that

the Local Board had not shown unfitness. We cannot say that the Board acted unreasonably, particularly when there was evidence that the school was responsible for spreading the information.

We do not hold that staff members cannot be fired for having sexual intercourse on school property. Nor do we hold that knowledge of an adulterous affair can never significantly impair job performance. We decide this case on the facts presented here.

■ We do hold that the State Board is invested with broad discretion to determine its policy, which includes evaluating the conduct of public school employees. See, *Lopez v. State Board of Education*, 70 N.M. 166, 372 P.2d 121 (1962); *Fort Sumner Municipal School Board v. Parsons*, 82 N.M. 610, 485 P.2d 366 (Ct.App.1971), Sutin, J. Specially Concurring. It may reach conclusions contrary to the Local Board or its own hearing officer if its (the State Board's) conclusion is not unreasonable and is supported by substantial evidence. The State Board determined that the Local Board had not met its burden of proof. Under the circumstances here this was not unreasonable, and there is substantial evidence to support its conclusion. So long as the State Board's decision is not unreasonable, is supported by substantial evidence, and is in accordance with law, we will not substitute our judgment. See, *Board of Education, supra,* and the dissenting opinion of Judge Sutin in *Morgan v. New Mexico State Board of Education,* 83 N.M. 106, 488 P.2d 1210 (Ct.App.), cert. denied 83 N.M. 105, 488 P.2d 1209 (1971).

3. *Concerning sexual harassment, Jennings was entitled to work conferences.*

■ The hearing officer concluded that sexual harassment was "unsatisfactory work performance" and therefore work conferences were required. Because proper procedure had not been followed the hearing officer would not allow any evidence of sexual harassment. The State Board agreed with the hearing officer, and we affirm the State Board.

If sexual harassment falls under "unsatisfactory work performance" two work conferences are required. Section 20–10–21, N.M.S.A.1978; State Board of Education Regulation 77–1(IV)(B)(1). Work conferences give notice to the employee that his work is unsatisfactory so he may correct any problems. Whether the conduct complained of is "unsatisfactory work performance" depends upon the particular facts. *Morgan, supra.*

Under 29 CFR § 1604.11(a) (1981) "sexual harassment" is defined as:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct òf a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, *or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.* (Emphasis added.)

Sexual harassment falls under "unsatisfactory work performance." It occurs at work, disrupts the work of others, and is neglect of duty. We conclude that sexual harassment is "unsatisfactory work performance."

Local Board contends that sexual harassment is immoral conduct and does not require a work conference. We do not agree. Alternatively, it argues that as an administrator Jennings is not entitled to work conferences, citing *Hayden v. Lee,* 90 N.M. 272, 562 P.2d 833 (1977). We reject this argument. *Hayden* held that a principal of a school was not entitled to conferences for unsatisfactory work because the regulations of the state board applied only to teachers. Regulation 77–1, *supra,* now provides:

Two or more conferences shall have been held with *certified school personnel* charged with unsatisfactory work performance by a local school board * * * before notice of discharge * * * is served upon them.

It is undisputed that Jennings was certified. The sexual harassment charge involves "unsatisfactory work performance," therefore, under § 20–10–21, *supra,* and Regulation 77–1, *supra,* Jennings was entitled to two work conferences.

### 4. *The 1980–81 contract.*

Besides being discharged from the remainder of his 1979–80 contract, Jennings was discharged from the contract for the following year, 1980–81. The Local Board contends that because Jennings, as an administrator, did not have tenure, it could refuse to rehire him without any cause whatsoever. The problem with this argument is that a 1980–81 contract had been entered into one week before the scandal broke.

Finding number two, adopted by the State Board, states:

By letter dated March 19, 1980, Superintendent of Schools Don R. Wood, pursuant to school board action on March 18, offered Jennings re-employment in the same capacity for the 1980–81 school year. By a hand written memorandum dated March 20, and received by the schools March 21, 1980, Jennings formally accepted the offer of re-employment.

 Contracts for employment made by a school district and its employees are governed by the ordinary rules of contract law, except where expressly restricted by statute. *Edwards v. Board of Education,* 197 Okl. 234, 169 P.2d 1015 (1946); *Spence v. School Dist. No. 3 of Arthur County,* 121 Neb. 64, 236 N.W. 145 (1931). There was a written offer and a written acceptance. There is no claim that contract terms were not definite.

Is there anything in the Certified School Personnel Act [§ 22–10–1 to § 22–10–26, N.M.S.A.1978] that would indicate that a binding contract was not made?

Local Board contends that under § 22–10–11(A), N.M.S.A.1978, there was no binding contract because it was not on the proper form. Section 22–10–11(A), *supra,* provides:

All employment contracts between local school boards and certified school personnel and between governing authorities of state agencies and certified school instructors shall be in writing on forms approved by the state board. These forms shall contain and specify the term of service, the salary to be paid, the method of payment, the causes for termination of the contract and other provisions required by the regulations of the state board.

█ For a binding contract to exist there must be compliance with the formal requisites prescribed by statute, *In Re Hawkins,* 129 Pa.Super. 453, 195 A. 761 (1937), unless they are directory only, *Lee v. Mitchell,* 108 Ark. 1, 156 S.W. 450 (1913); *Johnson v. Wert,* 225 Ark. 91, 279 S.W.2d 274 (1955).

█ Is § 22–10–11(A), *supra,* mandatory or directory? *Hudgins v. Mooresville Consol. School Dist.,* 312 Mo. 1, 278 S.W. 769 (1925) states:

Under a general classification statutes are either "mandatory" or "directory" * * *. If mandatory, in addition to requiring the doing of the things specified, they prescribe the result that will follow if they are not done; if directory, their terms are limited to what is required to be done. *State ex inf. McAllister v. Bird,* 295 Mo. 344, 244 S.W. 938 (1922).

Section 22–10–11(A), *supra,* does not prescribe the result that will follow if the contract is not on a form approved by the State Board. Moreover, the word "shall" may be merely directory; the intent of the legislature controls. *In re Mitchell's Estate,* 20 Cal.2d 48, 123 P.2d 503 (1942). Because § 22–10–11(A), *supra,* does not prescribe the result that will follow if the contract is not on a form approved by the State Board we conclude that it is directory only. Had the legislature intended that a contract be void unless on the approved form it could have so provided.

Because § 22–10–11(A) is directory, the fact that the contract was not on a form approved by the State Board does not un-dermine our conclusion that there was a binding contract. Once a contract exists the Local Board must show good cause to terminate it. The Local Board failed to show good cause, and cannot avoid the 1980–81 contract.

The decision of the State Board of Education is affirmed. The local board shall pay the costs of this appeal.

IT IS SO ORDERED.

SUTIN, J., specially concurs.

DONNELLY, J., dissents.

SUTIN, Judge (specially concurring).

I specially concur.

It is important to note under § 22–10–20, N.M.S.A.1978, that when a certified school administrator appeals to the state board from a decision of the local board, the state board holds a de novo hearing and under subsection (G):

The issues to be determined by the state board are as follows:

(1) whether there has been a prejudicial departure from the procedures required by statute or regulation of the state board; *or*

(2) whether the local board * * * has established, by a preponderance of the evidence presented, that sufficient cause existed for its decision. [Emphasis added.]

"The word 'or' designates alternative or separate categories." *First Nat. Bank v. Bernalillo Cty. Valuation,* 90 N.M. 110, 112, 560 P.2d 174 (Ct.App.1977). Subsection (G) provides a two pronged alternative or separate method by which the state board can determine the issues. Stated precisely, if the state board's decision in the instant case was correctly determined that "a prejudicial departure" occurred "from the procedures required" in the local board's discharge of Jennings, a certified school administrator, it was unnecessary for the state board to determine the alternative or separate issue. The same rule would apply if the state board correctly determined the second issue on "sufficient cause." It

would be unnecessary to determine the first issue on "prejudicial departure."

The state board's decision determined both issues against the local board. We are not compelled to uphold the decision on both issues. This concurrence is focused primarily upon the first issue of "prejudicial departure." Judge Neal's opinion established that "sexual harassment is 'unsatisfactory work performance.'" The local board, in discharging Jennings failed to afford Jennings any work conferences to correct the problems presented to the board.

Section 20–10–21 reads in pertinent part:

The state board shall prescribe by regulations ... procedures to be followed by a local school board in supervising and correcting unsatisfactory work performance of certified school personnel before notice of discharge is served upon them * * *.

State board Regulation No. 77–1 implements the mandate of § 22–10–21. Section III.F. defines "unsatisfactory work performance" as "the failure by certified school personnel to perform appointed tasks adequately." Section IV.A. states:

Uncorrected unsatisfactory work performance is good cause for discharging ... certified school personnel, so long as procedures established in Paragraph IV.B. herein are followed.

Section IV.B. states:

The following procedures shall be followed by local school boards * * * in supervising and correcting unsatisfactory work performance of certified school personnel before serving them with notice of discharge * * *.

1. Two or more conferences shall have been held with certified school personnel charged with unsatisfactory work performance by a local school board * * * before notice of discharge * * *. Such conferences shall be held with the individual's immediate supervisor and such other persons as the local board * * * may designate. Sufficient time shall have elapsed between the conferences to allow the instructor or administrator to correct the unsatisfactory work performance * *.

The purpose of work conferences is to allow certified school personnel to work harmoniously with a supervisor to perform appointed tasks adequately. Jennings' task was to discipline children. If Jennings' work was inadequate, the conferences could resolve any inefficiency of his in the discipline of children. The paramount purposes of the school system would be preserved. See, *Rumora v. Bd. of Edn. of Ashtabula Area City Sch. D.,* 43 Ohio Misc. 48, 72 O.O.2d 369, 335 N.E.2d 378 (1973).

The failure of the local board to afford Jennings' work conferences was a prejudicial departure from the procedures required by § 20–10–21 and Regulation 77–1, IV.B.1. On this determination alone, the decision of the state board can be affirmed.

The local board discussed this issue cursorily. The local board, in good faith, was interested solely in the discharge of Jennings, not in the correction of the problem. Due to the sensitivity of sexual harassment, the conduct of the local board can be understood. But a good faith violation of statute and regulation requirements does not validate its decision to discharge Jennings.

The state board of education was created by the people of New Mexico to "determine public school policy" and to "have control, management and discretion of all public schools, pursuant to authority and powers provided by law." Art. XII, § 6, N.M. Const. We must remind ourselves that the administration of the school system is entrusted by the constitution and the legislature to the state board and not to this Court. When a rational basis exists for its discretionary determinations, supported by the record and evidence insofar as it is factually required, this Court has no right to substitute its judgment for the state board's or to interfere with the latter's bona fide exercise of its discretion nor its decision.

I am unable to say that the state board's determination lacks a rational basis for reinstating Jennings to his position as an assistant principal.

Having reached this conclusion, a discussion of the other alternative or separate issue is unnecessary. However, this issue involves an appellate review of a determination made by the state board as a result of a de novo hearing held by the state board in which a local board and an assistant principal are adverse parties. We must first establish the perimeters of our review and then determine whether the local board met its burden.

The state board is a quasi judicial administrative agency. *Board of Education v. County Board of School Trust,* 13 Ill.App.2d 561, 142 N.E.2d 742 (1957); *Friesen v. Clark,* 192 Neb. 227, 220 N.W.2d 12 (1974); *Mullins v. Board of Education of Etowah County,* 249 Ala. 44, 29 So.2d 339 (1947); *Sugar Grove Sch. Dist. v. Bonneville Special Sch. Dist.,* 208 Ark. 722, 187 S.W.2d 339 (1945).

"Quasi Judicial" is defined in Black's Law Dictionary 1411 (Rev'd 4th ed. 1968) as follows:

> A term applied to the action, discretion, etc., of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature. [Citations Omitted.]

The state board shall render a decision which contains findings of fact and conclusions of law. Section 22–10–20(1). Not in name, but in fact, it sits as a district court by way of a hearing officer. The hearing proceeded in a manner the equivalent of one held before a district judge. We review the decision of the state board as we would that of a district judge.

The alternative or separate issue to be determined by the state board is "whether the local board" who has the burden of the evidence, "has established by a preponderance of the evidence presented, that sufficient cause existed for its decision." The local board discharged Jennings because of the extramarital affair and gross inefficiency. The determination of the state board arises from two factors: (1) whether the extramarital affair and gross inefficiency existed and were sufficient cause to discharge Jennings and (2) whether the local board established these causes by a preponderance of evidence, i.e., "substantial support in the evidence." *Lujan v. Circle K Corp.,* 94 N.M. 719, 722, 616 P.2d 432 (Ct. App.1980). Whether these causes existed and were established by substantial support in the evidence was an issue for the state board to determine, not this Court. It weighs the evidence and tests the credibility of the witnesses. We do not. The burden was on the local board to convince the state board, not this Court, that its decision had substantial support in the evidence.

I concur with Judge Neal's opinion on this issue. In passing, two additional evidentiary matters could have affected the decision of the state board.

Jennings was an assistant school principal. The principal of the school was present at the hearing. He was best able to determine the efficiency of Jennings to discipline the children. He was not called as a witness to establish that gross inefficiency existed as a "sufficient cause" to discharge Jennings. The local board did call as a witness a 16 year old student who testified that rumors of the affair were common knowledge among students even before Jennings' suspension and more widely discussed afterward.

"Rumor" is defined in Black's Law Dictionary 1498 (Rev'd 4th ed. 1968) as follows:

> Flying or popular report; a current story passing from one person to another without any known authority for the truth of it. Webster. It is not generally admissible in evidence. [Citations omitted.]

Technical rules of evidence are not applicable at hearings but in ruling on the admissibility of evidence, the hearing officer may require reasonable substantiation of statements tendered, the accuracy or truth of which is in reasonable doubt. Section 22–10–20(E). The hearing officer did not require substantiation as to the accuracy or truth of the rumors. Regardless, the dis-

charge of an assistant principal of a high school for the extramarital affair based upon rumor negates the existence of a fair hearing. The informality of the hearing must not lack in the rudimentary requirements that there be substantial evidence to sustain the decision of the local board.

We are not concerned with whether the state board believed that an extramarital affair was established. This fact is one sensitive in the minds of local and state boards of education. Differences of opinion exist whether "sexual harassment" is a sufficient cause upon which to discharge an assistant principal whose duty is to discipline children. Such differences also exist in the courts. See, *Morrison v. State Board of Education,* 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375 (1969). The state board makes this determination, not this Court.

The local board contends the state board erred in reversing the local school board for the year 1980–81 because no contract had been executed between the local school board and Jennings. Jennings claims compensation for the 1980–81 school year. The decision of the state board was silent on this issue. They are not before this Court.

DONNELLY, Judge (dissenting).

I respectfully dissent from the holding of the majority decision.

Each of appellant's four principal contentions rest upon the key issue of whether the State Board of Education accorded the local board a fair hearing in arriving at its decision following a de novo administrative hearing in this case.

The Alamogordo School Board, following an initial hearing, terminated appellee from his employment upon findings that his retention as an assistant principal at Alamogordo Mid-High was detrimental to the local school system because of his sexual harassment of school employees, and for gross inefficiency in the performance of his work. Thereafter, pursuant to § 22–10–20, N.M.S.A. 1978, appellee sought and obtained a de novo hearing before the State Board of Education.

Rather than conduct the de novo hearing itself, the State Board of Education elected under § 22–10–20, *supra,* to appoint a hearing officer to preside at the administrative hearing. Following the de novo proceeding, the hearing officer prepared a narrative report of the evidence at the hearing, and formulated proposed findings of fact and conclusions of law recommending dismissal of appellee and upholding the local school board's decision to fire appellee.

The hearing officer specifically found that appellee and a secretary employed at Alamogordo Mid-High had participated in an extramarital affair and had engaged in a number of adulterous acts including at least one episode in the Home Economics Department at the Mid-High School.

The hearing officer concluded that the claim by the local board of sexual harassment by appellee of school personnel could not be upheld—because he had not been afforded a prior conference pointing out the specifics of his unsatisfactory work habits, nor given an opportunity to correct these deficiencies. Nevertheless, the hearing officer determined that the local board's charges of gross inefficiency had been proven by a preponderance of the evidence.

Following the State Board's review at its September, 1981 meeting, of the proposed findings and conclusions of law, prepared by its hearing officer, the Board by a vote of five to three, with two abstentions, rejected its hearing officer's recommendation. The State Board advised its hearing officer that it would adopt findings of fact and conclusions of law contrary to that which he had recommended. The hearing officer then prepared revised findings of fact and conclusions of law altering his original recommendations to conform to the State Board's decision.

At its November 10, 1981 meeting, the State Board adopted by reference, the revised findings of fact and conclusions of law of its hearing officer and entered a written decision ordering the local school board to implement reinstatement of appellee.

The State Board's decision to overturn its hearing officer's decision from that of up-

holding the local board, to an opposite result—vindicating appellee was contrary to law. Although the State Board under § 22–10–20, *supra,* is not bound by the findings, conclusions or recommendations of its hearing examiner after a de novo hearing, *Board of Education v. New Mexico State Bd. of Ed.* 88 N.M. 10, 536 P.2d 274 (Ct.App. 1975), the Board's action in arriving at a contrary holding, without itself independently reviewing all of the evidence at the de novo hearing, and based upon a report of the hearing officer which it rejected, is contrary to the requirements of a fair hearing. This is especially true where the credibility of several key witnesses to the proceedings are a determinative factor in the Board's ultimate decision. *See McAlpine v. Garfield Water Commission,* 135 N.J.L. 497, 52 A.2d 759, 171 A.L.R. 172 (Ct.App.1947); *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936). At a de novo hearing, the State Board serves as a quasi-judicial body. It has a duty to see that a fair hearing is held. *See First Nat. Bank v. Bernalillo Cty. Valuation,* 90 N.M. 110, 560 P.2d 174 (Ct.App.1977).

At the initial hearing conducted by the local board, and at the evidentiary de novo hearing before the hearing officer, both fact finders determined that the appellee had engaged in an affair with a school secretary and had sexual relations with her in a school building. This determination was based upon the testimony of the secretary involved and upon other corroborating evidence. Appellee vigorously challenged the credibility of his accuser and the evidence against him. The heart of the local board's case rested upon the credibility of the secretary, Rose Willis. Both the local board and the hearing officer found her testimony creditable. The hearing officer's narrative report noted that appellee's own testimony had been flawed with inconsistencies. There was substantial evidence to uphold the findings of both the local board and that of the hearing examiner appointed by the State Board.

While the State Board is not bound to accept the findings of its hearing officer, nor to accept his recommended conclusions

of law, fundamental fairness requires that when the State Board, in its role as a fact finder, elects to disregard the findings and conclusions of its own hearing officer and to arrive at a contrary result, it must review the entire record of the de novo hearing and based on a fair review thereof, arrive at its own findings and conclusions of law. Although the State Board is not required under such circumstances to conduct the de novo hearing anew, fairness requires that it should consider all of the evidence in the record prior to arriving at its decision. Where, as in this case, the ultimate decision rests upon the credibility of one of two opposing major witnesses, a review of the hearing officer's report, without review of the entire record in the case, does not accord the fundamental due process. At the September meeting of the State Board, no transcribed record of the de novo hearing was available for the Board's review when it voted not to accept the findings or recommendations of its hearing officer and when it voted to prepare a revised decision in the case.

This court held in *Matter of Protest of Miller,* 88 N.M. 492, 542 P.2d 1182 (Ct.App. 1975), "When the administrative board has reached a decision and promulgated an order without considering all the evidence presented at the hearing, the 'decision and Order' is arbitrary and should be reversed."

In not reviewing all of the evidence and failing to independently prepare its own findings of fact and conclusions of law, the State Board failed to follow its own regulation governing de novo hearings. On appeal, a court can take judicial notice of agency rules or regulations. *T.W.I.W., v. Rhudy,* 96 N.M. 354, 630 P.2d 753 (1981). N.M. State Bd. of Educ. Regulation no. 78–3 (May 1, 1978), governing appeals provides in part:

V. DECISION OF THE STATE BOARD

 C. *WHERE HEARING CONDUCTED BY HEARING OFFICER.*

 (1) Where a Hearing Officer is designated by the State Board to conduct a

hearing * * *. The Hearing Officer shall * * * prepare and submit to the State Board of Education his formal written report * * *. The Hearing Officer's analysis shall contain a narrative of the facts involved * * * and, if desired, recommended findings of fact and conclusions of law which are suggested as the decision of the State Board of Education.

(2) After receiving the report of the Hearing Officer, *the State Board * * * shall either adopt the suggested findings of fact and conclusions of law, or modify said findings and conclusions of law, and render its decision.* If it is not satisfied with the report, the Board may order the record transcribed * * *. [Emphasis supplied.]

The State Board may choose not to follow the hearing officer's recommendations, but in such case it should adopt its own independent findings, conclusions and decision or modify the findings and conclusions of the hearing officer, based on its own proper review of the evidence. An administrative agency must follow its own regulations. *Hillman v. Health & Soc. Services Dept.* 92 N.M. 480, 590 P.2d 179 (Ct.App.1979). Failure to do so deprives the appellant of a fair hearing. *See First National Bank v. Bernalillo Cty. Valuation, supra.*

The State Board concluded that appellee's conduct amounting to "sexual harassment" necessitated one or more prior warning conferences as a prerequisite to any termination proceedings. Sexual harassment as defined in 29 C.F.R. 1604.11(a) (1980), cited in the majority opinion, may fall under any one of three separate categories spelled out in such definition. Relying upon this definition, it is my opinion that conduct found to come within any of the first two categories of the definition relied upon by the majority should not necessitate prior warning conferences as a prerequisite for dismissal. Conduct which is within either of the first two categories, should constitute as a matter of law "other good cause" to terminate a school employee under § 22–10–17(D), N.M.S.A. 1978.

The local board has also raised an issue of whether it was legally bound to rehire appellee for the following school year. Neither under the hearing officer's initial findings of fact and conclusions of law, nor under his revised findings and conclusions adopted by the State Board, was there formulated any ultimate conclusion that appellee was in fact rehired by a contract of employment for the school year 1980–1981. The written decision of the State Board also fails to address this. Although there is a finding of fact on this point (Finding No. 2), there is no board conclusion based on this finding. Section 22–10–20(I) *supra*, requires that the State Board's decision "*shall contain * * * conclusions of law.*"

For the foregoing reasons, I would remand this cause to the State Board for reconsideration of the case predicated upon the Board's review of the entire record of the de novo hearing, and for the adoption of new findings of fact and conclusions of law in accordance with the evidence of such hearing.