701 P.2d 361

**BOARD OF EDUCATION OF ALAMO-GORDO PUBLIC SCHOOL DISTRICT NO. 1., Petitioner-Appellant,**

v.

**Lyman JENNINGS, Respondent-Appellee.**

**No. 15072.**

Supreme Court of New Mexico.

June 5, 1985.

S. Thomas Overstreet, Alamogordo, for petitioner-appellant.

Durrett, Jordon & Grisham, Sandra A. Grisham, Alamogordo, for respondent-appellee.

## OPINION

RIORDAN, Justice.

Lyman Jennings (Jennings), a certified school administrator with the Board of Education of Alamogordo Public School District No. 1 (Local Board), was discharged from his employment for immoral conduct and gross inefficiency. The State Board of Education, after a hearing on Jennings' appeal, reversed the Local Board and ruled that Jennings had been wrongfully terminated. This determination was previously upheld by the Court of Appeals. *Board of Education v. Jennings*, 98 N.M. 602, 651 P.2d 1037 (Ct.App.1982).

The Local Board then instituted this case in Otero county as an action for declaratory judgment to determine the extent of its obligation to compensate Jennings in light of the Court of Appeals' opinion. The district court granted Jennings' motion for summary judgment and awarded Jennings the contract amount under his 1980–81 contract. From this judgment, the Local Board appeals. We affirm in part and reverse in part.

The issues on appeal are:

I. Whether the trial court erred in deciding that Jennings had a valid and binding contract for the school year 1980–81.

II. If a contract does exist, whether Jennings failed to mitigate his damages or, in the alternative;

III. Whether the Local Board is entitled to an offset for the income that Jennings earned during the contract period.

## FACTS.

The Local Board discharged Jennings "from all employment contracts ... including [the] contract for the school year 1979–1980 and the renewal of that contract for the school year 1980–81." In reviewing this decision, the State Board of Education, in its finding number two, found that:

By letter dated March 19, 1980, Superintendent of Schools Don R. Wood, pursuant to school board action on March 18, offered Jennings re-employment in the same capacity for the 1980–81 school year. By a handwritten memorandum dated March 20, and received by the schools March 21, 1980, Jennings formally accepted the offer of re-employment.

The relevant facts and the holding of the State Board of Education are adequately set out in the Court of Appeals' opinion.

## I. The 1980–81 Contract.

The uncertainty that led to this action arises from the Court of Appeals' opinion in *Board of Education v. Jennings*. Each of the three judges on the panel stated their views on the 1980–81 contract. The opinion of Judge Neal found NMSA 1978, Section 22–10–11(A), requiring school personnel employment contracts to be on forms approved by the state, to be directory only. The fact that Jennings' contract

was not on such a form, therefore, did not invalidate the contract. Judge Neal concluded that there was a valid and binding contract for 1980–81. *Board of Education v. Jennings*, 98 N.M. at 610, 651 P.2d at 1045.

By way of special concurrence, Judge Sutin stated:

The local board contends the state board erred in reversing the local school board for the year 1980–81 because no contract had been executed between the local school board and Jennings. Jennings claims compensation for the 1980–81 school year. The decision of the state board was silent on this issue. They are not before this Court.

*Id.* at 613, 651 P.2d at 1048.

The dissenting opinion of Judge Donnelly confronted the issue of the 1980–81 contract as follows:

The written decision of the State Board also fails to address this. Although there is a finding of fact on this point (Finding No. 2), there is no board conclusion based on this finding. Section 22-10-20(I) *supra*, requires that the State Board's decision *"shall* contain ... conclusions of law."

*Id.* at 615, 651 P.2d at 1050 (emphasis in original).

■ The issue of the 1980–81 contract's *validity* was never addressed by a majority of the Court of Appeals. Therefore, whether there was a valid contract for 1980–81 remained open to interpretation. The district court determined that the issue had not been decided and ruled that the 1980–81 contract was valid and binding. We uphold the district court's determination.

## II. Failure to Mitigate.

The Local Board contends that even if the 1980–81 contract is valid and binding, Jennings is barred from recovery because of his failure to mitigate damages. Jennings did not seek employment with any school district after his discharge. Case law in New Mexico requires a wrongfully discharged teacher to exercise reasonable

diligence to minimize his damages by seeking employment of the same kind and grade. *State ex rel. Freeman v. Sierra County Board of Education*, 49 N.M. 54, 157 P.2d 234 (1945). Further, "it is the general rule that when a teacher has been wrongfully discharged before the termination of his contract, he is not required to secure work in some other line, nor is he bound to seek or accept employment as a teacher of an inferior kind in order to mitigate damages." *Id.* at 57, 157 P.2d at 235.

■ The record contradicts the Local Board's contention, although the employment Jennings obtained after termination was not of the same *kind and grade*. Jennings testified that he was employed as a helicopter pilot during the 1980–81 contract period and that he earned a monthly salary approximately equivalent to his school district salary. Jennings not only sought, but obtained other employment. We are thus unable to hold that Jennings failed to mitigate his damages.

## III. Offset.

■ In the alternative, the Local Board argues that any damages owed to Jennings should be offset by the income that he received as a helicopter pilot during the contract period. As a general proposition, the measure of damages to which a wrongfully discharged employee is entitled is the amount due during the remainder of the term of the contract, reduced by any income which the employee has earned, will earn, or which, by the exercise of reasonable diligence, he could have earned during the unexpired term. *See, e.g.*, Annot., 22 A.L.R.3d 1047, 1054 (1968); and J. Calamari & J. Perillo, *Handbook of the Law of Contracts* § 14–18 (2d ed. 1977). This rule encompasses the duty to mitigate damages as announced in *Sierra County*.

■ Mitigation of damages is an affirmative defense, and its burden of proof is entirely on the contract breaker. *Sierra County*, 49 N.M. at 57, 157 P.2d at 236. The Local Board, the party in breach here, has met this burden. Jennings' deposition,

part of the record below, clearly shows that he earned income from another source during the unexpired term. It would, therefore, appear that the Local Board is entitled to an offset for this income. Jennings argues, however, that the general rule of law regarding offset has been altered by the Certified School Personnel Act, NMSA 1978, §§ 22–10–1 to –26 (Repl.Pamp.1984).

Section 22–10–18(B), provides in pertinent part:

> In the event the action of the local school board in discharging a certified school instructor or administrator * * * is reversed on appeal, payment of compensation to the person shall be reinstated in full * * * less an offset for any compensation received by the person *from a school district or state agency* during the period the compensation was terminated. (Emphasis added.)

Jennings interprets the statute to establish the exclusive types of income which may be used to offset damages. The district court agreed with Jennings' interpretation. We do not believe that the provision is to be so broadly construed.

We find no apparent reason why the ordinary rules relating to the measure of damages for breach of contract should not be applied. This Court has determined that "the purpose of allowing damages in a breach of contract case is the restoration to the injured of what he has lost by the breach, and what he reasonably could have expected to gain if there had been no breach." *Allen v. Allen Title Co.*, 77 N.M. 796, 798, 427 P.2d 673, 675 (1967). Compensation is thus the underlying principle.

■ Reading the statute to set out exclusive types of offset would necessitate payment of the full contractual salary to an administrator who for any reason obtains income from a source other than that specified in the statute. Such an employee would receive both incomes and thus a windfall. Note should be made of the fact that the duty to mitigate damages embodies notions of fairness and socially responsible behavior. "[A] party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed." *Blair v. United States*, 150 F.2d 676, 678 (8th Cir.1945). A different rule would inject a punitive element into the damage award, an element ordinarily absent from breach of contract actions. *Fredenburgh v. Allied Van Lines, Inc.*, 79 N.M. 593, 446 P.2d 868 (1968).

■ Furthermore, to interpret the statute to provide exclusive offset would alter the common law. "[S]tatutes in derogation of the common law are to be strictly construed." *Albuquerque Hilton Inn v. Haley*, 90 N.M. 510, 512, 565 P.2d 1027, 1029 (1977). When construing a statute, the court must ascertain and give effect to the intention of the legislature. *First National Bank v. Southwest Yacht & Marine Supply Corp.*, 101 N.M. 431, 684 P.2d 517 (1984).

The statute is not worded so as to be capable of the interpretation that Jennings desires. This Court is hesitant to so significantly alter a long staid common-law rule on the ground of what is at best an imprecisely worded phrase. More forceful language of exclusivity must be presented. We determine that by enacting the statute, the legislature did not intend to confer any special privileges or immunities upon certified school administrators or to place them in a different class than any other individual determined to have been wrongfully terminated.

An analysis of legislative enactments indicates that the legislature intended a more subtle alteration of the rule established in *Sierra County* concerning the duty to mitigate. NMSA 1953, Repl.Vol. 11 (1968), Section 77–8–15(B), stated in part:

> In the event the action of the local school board in discharging a certified school instructor or administrator is reversed on appeal, payment of salary to the person shall be reinstated in full ... less an offset for any salary received by ·the person *from a school district* during

the period the salary was terminated. (Emphasis added.)

In 1975, the legislature again affected the mitigation question by stating:

In the event the action of the local school board in discharging a certified school instructor or administrator or the action of the governing authority of a state agency in discharging a certified school instructor is reversed on appeal, payment of compensation to the person shall be reinstated in full ... less an offset for any compensation received by the person *from a school district or state agency* during the period the compensation was terminated.

NMSA 1953, Repl.Vol. 11 (1968), Section 77–8–15(B) (Supp.1975) (emphasis added).

 The duty of teachers and administrators to exercise reasonable diligence by seeking similar employment is expressly defined by Section 22–10–18(B). And, a lower duty is the end result. School personnel in New Mexico are no longer required to seek the same *kind and grade* of employment from which they were discharged. They may now seek a lower position in the school district or state agency without fear of being charged with failure to mitigate damages. A wrongfully discharged high school principal may thus accept a teaching position and, if successful in his appeal of his discharge, still receive the principal's salary, reduced only by the amount of the teacher's salary.

Our interpretation of the statute does not present the financial incentive to discharged personnel to seek employment outside the school district or state agency. Otherwise, if subsequently determined to have been wrongfully discharged, a teacher or administrator would gain the windfall of receiving both incomes. Instead, such persons would be encouraged to remain within their chosen vocation. Nor does this construction impose a penalty upon a school district subsequently found to have wrongfully terminated an administrator or teacher.

We conclude that Section 22–10–18(B) is not an exclusive offset provision and that the Local Board is entitled to an offset in the amount of income received by Jennings during the contract period 1980–81. The district court record is not clear, however, as to the precise amounts and types of income or the dates within which such income was received.

Should the district court on remand determine that Jennings received income equal to or greater than his contractual salary, he shall still be entitled to nominal damages and costs. *Colorado School of Mines v. Neighbors*, 119 Colo. 399, 203 P.2d 904 (1949).

We therefore affirm in part, reverse in part, and remand the cause to the district court for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

FEDERICI, C.J., and STOWERS, J., concur.