728 P.2d 454

**BOARD OF COUNTY COMMISSION-ERS OF CIBOLA COUNTY, New Mexico, Plaintiff-Appellant,**

v.

**BOARD OF COUNTY COMMISSION-ERS OF VALENCIA COUNTY, New Mexico, Defendants-Appellees.**

**No. 16215.**

Supreme Court of New Mexico.

Nov. 4, 1986.

Rehearing Denied Nov. 19, 1986.

Saul Cohen, Sutin, Thayer & Browne, P.C., Santa Fe, for plaintiff-appellant.

John J. Romero, Jr., Esquibel, Valencia, Sanchez & Griego, Los Lunas, for defendants-appellees.

## OPINION

WALTERS, Justice.

This appeal concerns a disagreement between two counties regarding entitlement to federal funds. Although the appellate briefs contain a paucity of cited authority, the issues in this case are important to the public and may recur at some future time. We have, therefore, undertaken our own research to address the question presented.

Pursuant to the "Payments in Lieu of Taxes Act" (PILT), 31 U.S.C. Sections 6901–6907 (1982 and Supp. II 1984), the federal government compensates local governmental units for loss of tax revenues from certain tax-exempt federal lands ("entitlement lands") located within local governmental boundaries.

The Bureau of Land Management (BLM) is delegated the authority to administer the PILT program for the Secretary of the Interior. 43 C.F.R. § 1881.0–5(e) (1985). Computation of the amount of a payment under PILT is based upon the acreage of entitlement lands located within the local government boundaries at the end of the federal fiscal year (September 30) preceding the fiscal year for which the PILT payment is to be made. 43 C.F.R. § 1881.-

1–2(b)(1) (1985). The amount is further limited by a formula related to the local government population. 31 U.S.C. § 6903(c)(1–2) (1982).

On June 19, 1981, Cibola County was created from the western portion of Valencia County. NMSA 1978, § 4–3A–1 (Supp. 1981). Prior to the formation of Cibola County, Valencia County had within its borders 710,967 acres of federal entitlement lands. Upon its creation, Cibola acquired 671,046 acres, or 94.38% of the federal entitlement lands previously located in Valencia County.

On September 21, 1981, BLM made its 1981 PILT payment in the amount of $500,-761 to Valencia County, paying none of it to Cibola County. Valencia County refused to transfer any portion of the 1981 PILT payment to Cibola County, and plaintiff Board of County Commissioners of Cibola County, New Mexico (Cibola), filed an action seeking declaratory judgment to compel defendant Board of County Commissioners of Valencia County, New Mexico (Valencia), to remit a portion of that payment to Cibola. Both Cibola and Valencia filed motions for summary judgment. The trial court granted summary judgment in favor of Valencia; from this decision Cibola appeals. Both parties assert there is no genuine issue of material fact.

Valencia contends that an order requiring Valencia County to transfer a portion of the contested PILT funds to Cibola County would be tantamount to overturning the decision of the federal agency charged with administering a legislatively-created program. *Cf. Lawrence County v. Lead-Deadwood School District*, 469 U.S. 256, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985); *Health & Social Services Department v. Garcia*, 88 N.M. 640, 545 P.2d 1018 (1976).

■ Valencia's assertion is without merit. Any federal interest in PILT funds is concluded once the initial payee and amount of payment are determined. *See Lawrence County v. Lead-Deadwood School District.* Cibola does not challenge BLM's payment of PILT funds to Valencia; instead, it asserts that at the time Cibola

County came into being, neither 31 U.S.C. Sections 6901–6907 nor 43 C.F.R. Section 1881 addressed how PILT payments should be distributed to newly-created counties, and that reference to applicable New Mexico law is thus required. Cibola relies on NMSA 1978, Section 4–3A–6 (Supp.1981), and NMSA 1978, Section 6–6–18 (Repl. Pamp.1983), to urge that it should receive 94.4% of the contested PILT payment.

Valencia answers that Section 4–3A–6 is purely a tax statute; that PILT payments are not taxes and, therefore, that Section 4–3A–6 does not apply to the present case.

It is true that PILT funds are not taxes. But that alone does not make Section 4–3A–6 inapplicable to the present case. That section, entitled "Unpaid Taxes," states:

> The county of Cibola is entitled to all unpaid taxes, which remain unpaid at the effective date of this act upon property within the area embraced by the county of Cibola *and any funds in the hands of the treasurer of Valencia county at the time this act becomes effective, or which thereafter come into the treasurer's hands which are properly transferable by the treasurer of Valencia county to the treasurer of Cibola county, shall be transferred* in the regular course in the administration of the office *upon the demand from such authority to receive same.* (Citations omitted; emphasis supplied.)

In construing a statute, we must give effect to the intent of the legislature. *E.g., Board of Education v. Jennings*, 102 N.M. 762, 701 P.2d 361 (1985). It is presumed that at the time Section 4–3A–6 was enacted, the legislature knew that PILT payments were forthcoming. *E.g., State ex rel. Bird v. Apodaca*, 91 N.M. 279, 573 P.2d 213 (1977). "[I]t is not the business of the courts to look beyond the plain meaning of the words of a clearly drafted statute in an attempt to divine" the legislative intent. *State v. Ellenberger*, 96 N.M. 287, 288, 629 P.2d 1216, 1217 (1981).

Section 4–3A–6 clearly provides that "Cibola is entitled to all unpaid taxes \* \* \* *and any funds* in the hands of the treasurer of Valencia County \* \* \* or [any funds] which thereafter come into the treasurer's hands which are properly transferable. \* \* \* " This statute must be construed so that, if possible, no part of it is rendered surplus or superfluous. *Western Investors Life Insurance Co. v. New Mexico Life Insurance Guaranty Association,* 100 N.M. 370, 671 P.2d 31 (1983). If this statute is interpreted as only providing for unpaid taxes, that portion of the statute which refers to "any funds" becomes superfluous.

■ The statutory title, "Unpaid Taxes," while shedding light on the legislative intent, does not limit the scope of this statute to merely unpaid taxes. *See State v. Ellenberger.* Notwithstanding the title, the content of the statute embraces taxes unpaid at the time of the creation of Cibola County, as well as all other funds thereafter coming into the hands of the Valencia County Treasurer which are "properly transferable" to the Cibola County Treasurer. Unpaid payments "in lieu of taxes" are sufficiently germane to the subject matter of "unpaid taxes" to permit our conclusion that the legislature intended that PILT funds were included within the meaning of "any funds" in Section 4–3A–6.

The next question is: Are PILT funds "properly transferable" funds within the meaning of Section 4–3A–6?

In *Lawrence County v. Lead-Deadwood School,* the Supreme Court held invalid a South Dakota statute which attempted to mandate that PILT funds be distributed in the same manner as were general taxes. The issue in *Lawrence* differs from the question here and the case is not helpful. Unlike South Dakota, the New Mexico legislature did not undertake to force Valencia County to spend the PILT payment in any particular fashion; nor did *Lawrence* address the transferability of a portion of the PILT funds from one governmental entity to another.

It does not require a strained reading to hold that a portion of the 1981 PILT funds are "properly transferable" from Valencia to Cibola pursuant to NMSA 1978, Section 4–3A–6 (Supp.1981). They were funds coming into the hands of the Valencia County Treasurer *after* the effective date of the Act, and are directly related to in-lieu-of taxes on lands of which the major portion lay in Cibola County.

Our holding is buttressed by the fact that 43 C.F.R. Section 1881.1–2 was amended on January 10, 1985 to clearly express the intent of Congress. At that time, subsection (f) was added and it precisely covers the question of Cibola's entitlement to a portion of the 1981 PILT payment. Although the amendment was not cited by counsel for either party, 43 C.F.R. Section 1881.1–2(f) (1985) provides:

> If a unit of general local government eligible for payments under this part reorganizes, the authorized officer shall, for the fiscal year in which the reorganization occurred, calculate payments as if the reorganization had not occurred and issue any payments due under this part *jointly to all of the newly formed units of general government.* (Emphasis added.)

Our interpretation of NMSA 1978, Section 4–3A–6 (Supp.1981), provides for this "joint" entitlement now mandated by regulation.

We therefore must determine what portion of the contested 1981 PILT payment is "properly transferable" from Valencia to Cibola. Cibola prefers that the county fiscal year, July 1, 1981, through June 30, 1982, be selected to compute the portion of the 1981 PILT payment it should receive. *See* NMSA 1978, § 6–6–17 (Repl.Pamp. 1983). It contends that under NMSA 1978, Section 6–6–18 (Repl.Pamp.1983), the 1981 PILT funds, not belonging to a "particular general county fund," became part of the county funds for the 1981–82 county fiscal year. Cibola County, having been created on June 19, 1981, was in existence for that entire county fiscal year. Thus, applying

Section 6–6–18, Cibola claims that it is entitled to 94.4% of the 1981 PILT payment.

Section 6–6–18, in pertinent part, reads: [A]ll monies other than those collected from the tax rolls, or that should have been on the tax rolls, that are collected during any current year and have not by law been placed as belonging to some particular general county fund shall go to and be a part of the fund for the current year in which the same are collected.

Cibola's position regarding the amount of PILT funds to which it is entitled conflicts with 31 U.S.C. Section 6902(a) which provides that "[t]he Secretary of the Interior shall make a payment for each [federal] fiscal year to each unit of general local government in which entitlement land is located." PILT payments are based on "[t]he amount of entitlement lands within the boundaries of each unit of local government as of the last day of the [federal] fiscal year preceding the [federal] fiscal year for which the payment is to be made. * * * " 43 C.F.R. § 1881.1–2(b)(1) (1985). The federal fiscal year for which payment was made was September 30, 1980, to September 30, 1981, during which period Cibola was a county only 28% of the time. The New Mexico statute would ignore the time frame for which PILT payments are to be computed. When there is a "direct and positive" conflict between a state law and a federal law, preemption may be inferred. *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 199, 629 P.2d 231, 275 (1980), *cert. denied*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981) (quoting *Kelly v. Washington*, 302 U.S. 1, 10–11, 58 S.Ct. 87, 92, 82 L.Ed. 3, 11 (1937)).

The purpose of the PILT Act is to "recognize the burden imposed by the tax immunity of Federal lands by providing minimum Federal payments to units of local government within the boundaries of which these lands lie." S.Rep. No. 1262, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5968, 5969.

We recognize, too, as did the United States Congress, that local governments must provide additional services related to federal lands within the boundaries of the local government, such as law enforcement, search and rescue missions, emergency services, public health protections, sewage disposal, recreation, and other similar benefits. *See id.* at 9, 13.

During 103 days or 28.22% of the 1981 federal fiscal year, Cibola had within its boundaries 94.38% of the entitlement land which had previously been in Valencia County. Necessarily, Cibola was obligated during that period to provide services which were directly related to activities on federal lands within its boundaries and Valencia was responsible for such services on all of the entitlement lands during the remainder of that fiscal year, and upon 5.62% of the acreage for the other 103 days. PILT payments were intended by Congress to help defray such costs. Therefore, in accordance with clear Congressional intent, we hold that Cibola is entitled to 28.22% of 94.38% of the 1981 PILT payment, or $133,-373, plus interest at the rate of ten percent interest. NMSA 1978, §§ 56–8–3, –4 (Cum. Supp.1980); *Hillelson v. Republic Insurance Co.*, 96 N.M. 36, 627 P.2d 878 (1981).

The matter is reversed and remanded to the trial court for entry of judgment and interest from date of judgment until payment, in accordance with this Opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and FEDERICI, J., concur.