487 P.2d 159

**Elvin W. McALISTER, Appellant,**
**v.**
**NEW MEXICO STATE BOARD OF**
**EDUCATION, Appellee.**
**No. 621.**

Court of Appeals of New Mexico.
June 11, 1971.

James E. Snead, Jones, Gallegos, Snead & Wertheim, Santa Fe, for appellant.

Mack Easley, Easley & Reynolds, Hobbs, for Hobbs Municipal School Dist.

E. P. Ripley, Santa Fe, for New Mexico State Bd. of Education.

## OPINION

WOOD, Judge.

McAlister, a school principal, was discharged during the term of his existing contract. He appealed the decision of the Local Board (Hobbs Municipal School Board) to the State Board (New Mexico State Board of Education). The State Board affirmed the Local Board and McAlister appeals directly to this court. Section 77-8-17, N.M.S.A.1953 (Repl.Vol. 11, pt. 1). The issues concern: (1) evidence of insubordination; (2) whether the insubordination was prior to the current contract; (3) written hearsay evidence; (4) pre-hearing consideration of written statements; and (5) State Board regulations.

*Evidence of insubordination.*

Several causes were listed in the notice of discharge served on McAlister. The Local Board's decision, affirming the discharge after the Local Board hearing, contains multiple grounds for affirming the discharge. The discharge, and the cause for discharge, stems from a reading program. Neither the details of the reading program, the philosophy behind it, nor the results of that program is involved in this appeal.

McAlister states he "* * * was charged with deviating from school rules and policy in instituting a reading program at the school, but the evidence is clear that the program was not a deviation from the school rules and regulations. * * *" While the notice of discharge and the Local Board's findings and conclusions did include a claim of violation of school rules and regulations, the attack on the evidence supporting this issue is misdirected in this appeal.

The notice of discharge also stated that McAlister had been insubordinate to his superiors. The Local Board found insubordination as a fact and concluded that McAlister had been insubordinate to his superiors. The State Board's affirmance of the Local Board's decision was on the basis there was "* * * evidence substantiating the finding of the Hobbs Municipal School Board that appellant was insubordinate." Our review is a review of the State Board's decision. See § 77-8-17(F), supra. The issue here is not whether McAlister violated school rules and regulations. The issue here involves the evidence pertaining to insubordination.

Black's Law Dictionary (4th ed. 1951) indicates that insubordination is disobedience to constituted authority. Webster's Third New International Dictionary (1966) states: "* * * Insubordinate applies to disobedience of orders, infraction of rules, or a generally disaffected attitude toward authority, * *' *"

There is substantial evidence of the following: the elementary grades in the school system had, for many years, been operated on a self-contained classroom basis. This practice, or organization, was well known by teaching and administrative personnel within the system. During the 1969–70 school year, and within the term of McAlister's current contract, a reading program at McAlister's school departed from the self-contained classroom basis. This departure was with McAlister's knowledge and approval. In permitting this departure, McAlister did not seek nor obtain approval from anyone.

The evidence is undisputed that the Superintendent of Schools is a superior offi

cer of McAlister and that the Superintendent's duties include the "* * * supervision of the instructional program of all schools in the system. * * *" There is substantial evidence that the Superintendent had told McAlister not to effect a departure from the standard practice without prior approval.

McAlister's position, consistently maintained, is that the departure was one he had authority to effect as a school principal; that he did not need permission from anyone.

■ On the basis of the foregoing evidence the State Board could reach the conclusion that evidence before the Local Board substantiated the finding of insubordination. In reaching this result, we have not overlooked McAlister's apparent contention that he could not be insubordinate to the Superintendent unless it is shown that the Superintendent's position concerning self-contained classrooms was expressly authorized in writing by the Local Board. This contention is without merit because insubordination is disobedience to constituted authority. The evidence as to the Superintendent's authority to supervise the instructional program is undisputed.

The State Board's affirmance of the discharge on the basis of insubordination is not unreasonable. See Wickersham v. New Mexico State Board of Education, 81 N.M. 188, 464 P.2d 918 (Ct.App.1970).

*Whether the insubordination was prior to the current contract.*

McAlister contends the insubordination related to a period of time prior to his current contract and, therefore, could not be the basis for discharge during the current contract term. He relies on Roberson v. Board of Education of City of Santa Fe, 80 N.M. 672, 459 P.2d 834 (1969) which states:

"* * * matters which occurred under a previous contract would not support cancellation of a subsequent contract. * * *

"* * * Since the evidence relied upon as a basis or support for cancellation of a contract for future services related solely to known conduct during prior periods of employment, * * * it could not furnish a basis for cancellation of a contract for the future and accordingly was improperly admitted * * *."

The evidence is substantial that a departure from the recognized self-contained classroom organization occurred during the term of McAlister's current contract. The fact that McAlister may have departed from the recognized organization during prior contracts does not alter the fact that insubordination occurred during the existing contract. The rule of *Roberson,* supra, is simply inapplicable to the classroom organization during the existing contract.

The question of matters occurring under a prior contract arises because evidence as to prior departures from the organizational structure was introduced at the Local Board hearing. Those prior departures and matters pertaining to those departures were evidence tending to establish McAlister's knowledge of the practice of classroom organization, knowledge of his departure from that organization and knowledge that such a departure required administrative approval in advance. Two witnesses, testifying in connection with the prior departures, testified that McAlister admitted he wasn't supposed to be grouping students in the way he was doing it but that he was going to keep on doing it.

■ The evidence as to matters occurring prior to the current contract does not violate *Roberson,* supra, where as here, the evidence is used to establish McAlister's knowledge that he was carrying on a practice contrary to the Superintendent's position on classroom organization. *Roberson* prohibits discharge for prior misconduct, but it does not prohibit proof of prior knowledge that what was done during the contract term was in fact misconduct.

Apart from the question of departures from the standard classroom organization prior to the current contract, there is evi-

dence of insubordination during the current contract which in no way relies on prior matters. During meetings between McAlister and the Superintendent resulting from the classroom organization during the existing contract, McAlister indicated he could not effectively administer the program as presently organized; "* * * my conscience wouldn't allow me to do it, * * *" Further, he indicated that he could not conform to the self-contained classroom structure and do an enthusiastic job, nor could he inspire his teachers to do an enthusiastic and competent job. Such a disaffected attitude toward authority supports the finding of insubordination.

*Written hearsay evidence.*

McAlister complains of the admission of four written exhibits at the Local Board hearing on the basis that the documents were hearsay and prejudicial to his interest.

Section 77–8–16(C), N.M.S.A.1953 (Repl. Vol. 11, pt. 1) is concerned with the admission of evidence. It provides that technical rules of evidence shall not apply. It states in part:

"* * * A hearing shall be conducted so that the contentions or the defenses of each party to the hearing are amply and fairly presented without substantial prejudice. In ruling on the admissibility of evidence, a local school board may require reasonable substantiation of statements or records tendered when the accuracy or truth of the statements or records are in reasonable doubt. When a hearing will be expedited and interests of the parties will not be substantially prejudiced, any part of the evidence may be received in written form;"

Under this statute the written hearsay was admissible if the hearing would be expedited and the interests of the parties would not be substantially prejudiced. The question of expediting the hearing is not a material issue. The issue is whether the four exhibits substantially prejudiced the rights of McAlister.

All four of the exhibits have some bearing on McAlister's knowledge that he should obtain administrative approval before undertaking classroom organization of his own choice. S–21 is a report to McAlister from the Director of Instruction concerning grouping of students in 1958 contrary to the standard practice. It concludes with a recommendation for a conference with the Superintendent to attempt to resolve the problem. S–23, S–33 and S–35 all pertain to a "Title I" program in 1968 and departures from the approved program at the school where McAlister was principal. S–35 is the minutes of a meeting of teachers and administrative personnel in connection with the guidelines to be followed. S–23 is a report from the Director of Instruction to the Superintendent concerning that meeting. S–33 is a report from the "Title I" director to the Director of Instruction to the effect that even after the meeting certain guidelines were not being followed. None of the four exhibits contain evidence of insubordination during the term of the current contract, but each tends to establish that McAlister's insubordination during the current contract was willful.

S–35, the minutes, is identified as a true and accurate report of what occurred at the meeting; the identification is by the person who conducted the meeting. The other three exhibits are identified by their authors as an accurate report of the matters referred to in the report. The three reports were documents prepared in the course of carrying out the respective duties of their authors within the school system. There was testimony substantiating the contents of the reports from the witness stand. See § 77–8–16(C), supra. With this record we cannot say that McAlister's right to a fair hearing, or his interests, was substantially prejudiced by the admission of the four exhibits.

*Pre-hearing consideration of written statements.*

Section 77–4–2(D), N.M.S.A.1953 (Repl. Vol. 11, pt. 1), which pertains to the pow-

ers and duties of a local school board, states:

"D. subject to the provisions of law, approve or disapprove the employment or discharge of all employees and certified school personnel of the school district upon a recommendation of employment or discharge by the superintendent of schools;"

The Superintendent recommended to the Local Board that McAlister be discharged. In support of this recommendation the Superintendent submitted various written documents for the Local Board's consideration. Some of these documents were introduced in evidence at the subsequent discharge hearing; some, however, were not.

McAlister claims that submission of these documents to the Local Board was prejudicial to him and "* * * amounts at the very least to unfairness. * * *" This position, if adopted, would have the effect of requiring a Local Board to approve or disapprove a Superintendent's recommendation without consideration of records of the school system pertinent to that recommendation. We decline to adopt such a position.

Section 77–4–2(D), supra, provides for the Superintendent's recommendation, and the Local Board's approval of that recommendation. This being a discharge during the term of the contract, the notice and hearing requirements of § 77–8–14, N.M.S.A.1953 (Repl.Vol. 11, pt. 1), were applicable. These procedures were followed. At the hearing, pursuant to § 77–8–14, supra, the Local Board must find cause for the discharge and upon review, the State Board must find evidence substantiating the discharge for cause. Section 77–8–17(D), supra.

■ The fact that documents in support of the Superintendent's recommendation were presented to the Local Board, when the question before the Local Board was the approval or disapproval of the recommendation, did not prejudice McAlister. There is no prejudice because the discharge will not be approved under the stat-

utory scheme unless there is evidence substantiating the discharge for cause. The fact that the Local Board considered these documents in connection with the Superintendent's recommendation and, having approved that recommendation, then conducted a hearing to establish the cause, did not result in unfairness to McAlister under the statutory scheme because again, good cause must be shown by the record. Compare Wickersham v. New Mexico State Board of Education, supra.

*State Board regulations.*

Section 77–8–18, N.M.S.A.1953 (Repl. Vol. 11, pt. 1), provides in part:

"The state board shall, by regulations, prescribe procedures to be followed by a local school board in supervising and correcting unsatisfactory work performance of certified school instructors with tenure rights before notice of termination is served upon them and of certified school personnel before notice of discharge is served upon them. * * *"

Pursuant to this authority, the State Board adopted certain regulations "* * * governing supervision and correction procedures related to refusal to reemploy or discharging for unsatisfactory work performance." During the State Board hearing, members of that Board raised the question whether insubordination was encompassed in the term "unsatisfactory work performance." Assuming, for the purposes of this appeal, that it is included, we do not consider this question.

There are four regulations. Each has a heading. The heading of each pertains to "teachers" and unsatisfactory work performance. If these headings can be considered to limit the applicability of the contents of the rules, then none are applicable. McAlister is not a teacher, he is "* * * a certified school administrator who spends more than one-half of his employment times in administrative functions." Being in this category, "tenure" is not involved. See § 77–8–13, N.M.S.A.1953 (Repl.Vol. 11, pt. 1). We will assume, for this appeal, that the word "teacher" in the headings to

the rules does not limit the contents of the rules.

The rules involved in this appeal appear at pages 5 and 7 of the State Board booklet setting forth the regulations. The introductory paragraph to the page 5 regulation states the State Board "* * * adopts the following procedures to be followed by local boards prior to service of a notice of termination upon certified nontenure personnel at the end of a school year for unsatisfactory work performance:" McAlister asserts the applicability of this rule and relies on paragraph 4 of the rule which reads:

"Written notice of discharge or termination for unsatisfactory work performance shall be served upon such personnel at least two (2) weeks prior to the end of the school year."

A similar regulation was upheld and applied to a tenure teacher in Brininstool v. New Mexico State Board of Education, 81 N.M. 319, 466 P.2d 885 (Ct.App.1970). See also Tate v. New Mexico State Board of Education, 81 N.M. 323, 466 P.2d 889 (Ct.App.1970). Neither case is applicable here, however, because both cases involved the non-reemployment or termination of the teacher. This situation is to be distinguished from a discharge during the term of a contract. Compare §§ 77-8-9 and 77-8-12 with § 77-8-14, N.M.S.A.1953 (Repl.Vol. 11, pt. 1).

Even though "termination" and "discharge" are distinguished in the statutes, McAlister claims the above quoted paragraph 4 of the rule on page 5 should apply because it refers to both discharge and termination. It is undisputed that notice of discharge was not served upon McAlister two weeks or more prior to the end of the school year. His notice of discharge was served in July, sometime after the end of the school year.

We disagree with this contention. The introductory paragraph of the rule appearing on page 7 of the State Board booklet states the State Board "* * * adopts the following procedures to be followed by

local boards prior to service of a notice of discharge upon certified non-tenure personnel during the term of an existing contract for unsatisfactory work performance:" Comparing the "adopted" portions of the regulations, it is clear that the State Board intended the page 5 rule to apply to "termination" situations and the page 7 rule to apply to "discharge" situations. The page 7 rule contains no two week notice requirement, in light of the "adopting" provisions of the rules, the reference to "discharge" in paragraph 4 of the page 5 rule can only be considered an unintended drafting error. We note that our view is consistent with the State Board decision. It held: "* * * the State Board regulations requiring service of notice of hearing at least two weeks prior to the last day of school are not applicable to this case;"

On the basis of the contents of the regulations, we hold that McAlister was not entitled to notice of discharge at least two weeks prior to the end of the school year and that the page 5 regulation pertaining to "termination" is not applicable to McAlister's notice of discharge.

The page 7 regulation, pertaining to discharge, is assumed to apply even though its heading is limited to teachers, thus, apparently, excluding one in McAlister's position. This regulation requires three conferences, and requires a written record "* * * specifying the areas of unsatisfactory work performance, all action taken to improve such performance and all improvements made. * * *"

McAlister asserts his meetings with the Superintendent do not amount to conferences because the areas of unsatisfactory work performance were not specified and there is nothing indicating action taken to improve McAlister's performance. We have assumed that insubordination is an aspect of unsatisfactory work performance. While the records of the meetings between McAlister and the Superintendent do not show a formal specification of insubordination, these records do show that issues involved included McAlister's departure

from the self-contained classroom organization and McAlister's willingness to comply with that type of classroom organization. These records support the State Board's finding of no " * * * substantial departure from * * * regulations prescribed by the State Board which is prejudicial to appellant, * * *" See § 77–8–17(D), supra. We cannot say that this ruling of the State Board is arbitrary, unreasonable, unlawful or capricious. Wickersham v. New Mexico State Board of Education, supra.

The decision of the State Board is affirmed.

It is so ordered.

SPIESS, C. J., concurs.

SUTIN, Judge (specially concurring).

I concur in the result of the majority opinion, but not for the reasons stated. I specially concurred in Fort Sumner Municipal School Board v. Parsons, et al., 82 N. M. 610, 485 P.2d 366 (Ct.App.1971), because the State Board of Education did *not* comply with the authority and powers granted in § 77–8–17(D), N.M.S.A.1953 (Repl.Vol. 11, pt. 1). I specially concur in this opinion because the State Board of Education *did* comply with its authority and powers.

The State Board found, (1) "That the transcripts do not disclose a substantial departure from the procedures and regulations prescribed by the State Board which is prejudicial to 'McAlister' * * *;" (2) "that the transcripts contain evidence substantiating the finding of the Hobbs Municipal School Board that 'McAlister' was insubordinate;" and concluded "That good cause exists for the discharge of Elvin McAlister."

The decision of the State Board was final. Section 77–2–2(T), N.M.S.A.1953 (Repl.Vol. 11, pt. 1). McAlister appealed. The State Board decision complied with its statutory authority and powers in a review proceeding provided by law. This is the reason I concur.

I desire to supplement the concurring opinion in *Parsons*. There, I stated "The State Board of Education is not an administrative agency of the state because it is created by the constitution, not by the legislature." No authority was cited.

State ex rel. Sholes v. University of Minnesota, 236 Minn. 452, 54 N.W.2d 122, 126 (1952), said:

"An administrative agency * * * is given *life* by the legislature. Its powers and duties are prescribed by the legislature. *As it is created, so may it be destroyed.* Its powers may be curtailed or enlarged by legislative action. The legislature has no such power over the board of regents of our university. Its charter may be amended only by action of the people." [Emphasis added].

However, see Utton, Constitutional Limitations on the Exercise of Judicial Functions by Administrative Agencies, 7 Natural Resources Journal 599 (1967). Professor Utton recognizes administrative agencies as being "Constitutional Agencies" and "Legislatively Created Administrative Agencies." The article does not discuss the relationship between constitutional agencies and "administrative agencies of the state" in Article VI, Section 29 of the Constitution.

The State Board may not be an administrative agency of the state, and we should be concerned with the jurisdiction of the Court of Appeals to review its decisions.

Article VI, Section 29 of the Constitution provides:

"The court of appeals shall have no original jurisdiction. It may be authorized by law to review directly *decisions of administrative agencies of the state,* and it may be authorized by rules of the Supreme Court to issue all writs necessary or appropriate in aid of its appellate jurisdiction. *In all other cases,* it shall exercise appellate jurisdiction as may be *provided by law.*" [Emphasis added].

In my opinion, "administrative agencies of the state" is limited to legislative creat-

ed agencies. Otherwise, the constitutional provision would have included "all" administrative agencies, or constitutional and legislative agencies. Generally, administrative agencies are creatures of the statute. This is a common belief in the legal mind.

The legislature, by § 16–7–8, N.M.S.A. 1953 (Repl.Vol. 4), granted the Court of Appeals jurisdiction to review on appeal civil and criminal actions, workmen's compensation actions, post conviction remedies, actions for violation of ordinances, decisions of administrative agencies, and finally:

> "G. *decisions* in *any other action* as may be *provided by law.*" .[Emphasis added].

The legislature may have intended the words "decisions in any other action" to mean "in all other cases." But, to me, it sounds like a limitation because the words "all other cases" are broader than "decisions in any other action."

The word "cases" in the constitutional provision, supra, does not embrace "decisions of administrative agencies," but the word "case" does include a "decision." Wylie Bros. Contracting Co. v. Albuquerque-Bernalillo C.A.C.B., 80 N.M. 633, 639, 459 P.2d 159 (Ct.App.1969).

Is a decision of a judicial hearing before the State Board "any other action" which gives the Court of Appeals jurisdiction?

The words "any other action" are very broad and without limitation and in the statute, it follows actions, proceedings and decisions. This could include a judicial hearing before a constitutional body. The legislature did provide procedure for a decision of the State Board. Section 77–8–1 to § 77–8–19, N.M.S.A.1953 (Repl.Vol. 11, pt. 1). The legislature provided another "action," so this is a "decision" in another action provided by law.

This jurisdictional analysis was not heretofore discussed by New Mexico courts of review. But this court has in the past accepted jurisdiction on appeal from decisions of the State Board. I concur at this point, because the jurisdictional problem has not been a matter of interest in the struggle between the teacher and the legislature.

In *Parsons* special concurring opinion, I used the term "quasi-judicial" adopted from a Montana decision. Utton, supra, has convinced me the word should be removed and "judicial" substituted therefor as the term "judicial power" was used in McCormick v. Board of Education, 58 N. M. 648, 660, 274 P.2d 299 (1954). I disagree with *McCormick*. It states that under the constitution, the decisions of the State Board are final and conclusive and not subject to review, and, in the next sentence, it states that the State Board decisions are subject to review. I interpret Article XII, Section 6(A) of the Constitution, as amended November 4, 1958, to declare that the State Board shall act "pursuant to authority and powers provided by law." Under the previous constitutional provision in existence during *McCormick*, the State Board had control of public schools "under such regulations as may be provided by law." There is a substantial difference in both constitutional provisions. This difference has not heretofore been discussed or decided by a court of review. It should be done.

It is my opinion, as stated in *Parsons*, that our only power of review is to determine whether the State Board complied with authority and powers granted it in § 77–8–17 (D), supra. This puts the teacher within the authority and power of the State Board granted by the legislature. Otherwise, what purpose could the people have in creating a State Board of Education as a constitutional body?

I, accordingly, specially concur.