751 P.2d 722

**Marcia KLEINBERG, Appellant,**

v.

**BOARD OF EDUCATION OF the ALBU-QUERQUE PUBLIC SCHOOLS a/k/a Board of Education of the City of Albuquerque; New Mexico Board of Education, Appellees.**

**No. 9445.**

Court of Appeals of New Mexico.

Feb. 4, 1988.

Certiorari Denied March 10, 1988.

J. Michele Guttmann, Freedman, Boyd & Daniels, P.A., Albuquerque, for appellant.

Peter J. Adang, Eleanor K. Bratton, Modrall, Sperling, Roehl, Harris, & Sisk, P.A., Albuquerque, for appellees.

**OPINION**

GARCIA, Judge.

This is an appeal from the New Mexico State Board of Education's (state board) decision to affirm the Board of Education of the Albuquerque Public Schools' (local board) confirmation of a teacher's discharge. While several issues are raised by the teacher, the principal issue is whether the local board complied with provisions of the New Mexico Open Meetings Act (the Act), NMSA 1978, Section 10–15–1 to –4 (Repl.Pamp.1983 & Repl.Pamp.1987). We affirm.

FACTS

Appellant, Marcia Kleinberg (Kleinberg), a tenured elementary school teacher, was discharged by the Albuquerque Public Schools (APS) for insubordination, conduct unbecoming a teacher, unprofessional conduct, and open defiance of supervisory authority. Kleinberg filed a grievance as a result of her initial suspension but the grievance was denied at the first level. Thereafter, she appealed to the local board. The local board conducted an extensive hearing, lasting in excess of two weeks, on the discharge recommendation. The local board heard thirty hours of testimony from thirteen witnesses including Kleinberg. Counsel for both APS and Kleinberg presented witness testimony and documentary evidence, cross-examined adverse witnesses, and presented argument and legal authority to the local board. While the evidence presented was extensive, detailed and contested, we deem it necessary to summarize salient portions of the hearing officer's narrative which were supported by substantial evidence on the record as a whole.

Jose Lobato (Lobato) became the principal of Arroyo del Oso Elementary School in 1982. At the time of Lobato's appointment, Kleinberg was a teacher assigned to Arroyo del Oso and had been teaching for approximately ten years. Prior to Lobato's assumption of the principalship, Kleinberg had worked in various elementary schools for different principals. Testimony was presented confirming difficulties Kleinberg

had had with her prior supervisors including recurring problems with tardiness, complaints of inadequate supervision of her students, and difficulties in getting along with her supervisors.

While Kleinberg's initial working relationship with Lobato was cordial, Lobato cautioned Kleinberg about her tardiness, her failure to adhere to his directives, and leaving her students unsupervised. Thereafter, the relationship quickly deteriorated. As a result of recurring conflicts and numerous incidents during their first two years of working together at Arroyo del Oso, their working relationship was strained and tense. Kleinberg had insisted that Lobato's directives be in writing, and consequently, their relationship was characterized by the exchange of numerous formalized memoranda.

Kleinberg's excessive tardiness, recurring absences from her classroom, inadequate supervision of her students, and inadequate lesson plans, resulted in warnings and reprimands. Kleinberg would become angry at Lobato's criticisms, and at times would yell or scream at him, sometimes, within the presence or hearing of both students and parents. Testimony was presented that Kleinberg mocked Lobato; and she once told him that he needed speech therapy because his speech mannerisms "tortured" her and she could not cope with the problem. On another occasion, after being called into Lobato's office because she had failed to sign up for a mandatory computer instruction course, she became so enraged that she screamed at him, stormed out of his office and slammed the door with such force that several pictures were knocked from the office wall. As she walked past Lobato's secretary, she yelled "I don't know how you stand working for that man." Generally, Kleinberg viewed Lobato as being unfair and harassing; Lobato viewed Kleinberg as uncooperative, combative, and unwilling to follow his directives.

The incidents which formed the basis for Kleinberg's discharge all occurred during the 1985–86 school year, the year she was fired. That school year, all teachers had been instructed by Lobato to enroll in and attend a math conference. All did except for Kleinberg. On the registration deadline, September 13th, Lobato directed that Kleinberg enroll, and although she did, she did not attend the conference.

On September 30th, Lobato observed Kleinberg's students misbehaving in the cafeteria and leaving the cafeteria unsupervised. Teachers were required to escort and supervise their students to, from and while at lunch. Lobato had previously cautioned Kleinberg about her students' conduct and her lack of supervision. Later that day, during a classroom observation, Lobato noted that Kleinberg's classroom was untidy. As a result, Lobato prepared a memorandum to Kleinberg outlining his concerns about student supervision, the cafeteria incident, the classroom appearance, and a problem which occurred a few days before when a substitute teacher utilized Kleinberg's lesson plans and found them difficult to follow. The memorandum was sent to Kleinberg. On the following day, pursuant to a district mandate to monitor classes and in accordance with Lobato's daily routine of observing teachers in their class setting, Lobato visited and monitored Kleinberg's class. Because of the seriousness of the incident that occurred, we quote from the local board's findings which are supported by substantial evidence on the record as a whole.

On October 2, 1985, Mr. Lobato entered Ms. Kleinberg's classroom at about 11:15 a.m. to make a normal observation. At the time Mr. Lobato entered the classroom, Ms. Kleinberg was at her desk. She then left her desk to attend to students, and Mr. Lobato moved towards [sic] her desk and sat down to review her lesson plans which were incomplete. Ms. Kleinberg watched Mr. Lobato from her position in the classroom. When Mr. Lobato picked up a pen from Ms. Kleinberg's desk, she walked up behind him, grabbed her lesson plans and pen from his hands, and demanded that Mr. Lobato leave her classroom. This action was within the sight and hearing of students in the classroom. Ms. Kleinberg then declared to Mr. Lobato that "the purpose

of his visit was job harassment" and that she "didn't think that harassing a teacher was part of his job." Mr. Lobato had said nothing to Ms. Kleinberg at this point, but he declined to leave.

Mr. Lobato then went to the back of the classroom, unrolled some paper toweling from over the sink to use as note paper, borrowed a pen from a student, and sat down. Ms. Kleinberg then went to the back of the room and again, within the hearing of students, asked Mr. Lobato to leave. He declined, directing Ms. Kleinberg to continue with her regular classroom instruction. Then, for a third time, Ms. Kleinberg insisted that Mr. Lobato leave her classroom. At this point, Mr. Lobato moved to the side of Ms. Kleinberg's desk. Ms. Kleinberg asked Mr. Lobato if he would like to address the students, and he told the students that he was just observing and didn't have anything to say.

Ms. Kleinberg then suggested to the students that they play a game outside and instructed them to get the kickball equipment. Mr. Lobato, however, requested that the students not go outside and that Ms. Kleinberg continue with her regular classroom instruction. Ms. Kleinberg told the students that they could not go out and play.

Mr. Lobato returned to the back of the room and made some notes on the toweling. Ms. Kleinberg followed him and, for the fourth time within the hearing of students, asked him to leave, stated that he was extending the power of his position, using his power to upset her, and stated she didn't "respect it."

Mr. Lobato again directed Ms. Kleinberg to continue with her regular instruction. Ms. Kleinberg reminded Mr. Lobato that she had repeatedly asked him to leave and then said within the hearing of students, "[i]f you don't, I'll call the police." Ms. Kleinberg was, at this point, standing close to Mr. Lobato and said for a fifth time, "I am directing you to leave." Mr. Lobato responded again by requesting that Ms. Kleinberg return to her regular classroom instruction. Ms. Kleinberg then ripped the toweling from Mr. Lobato's hand, crumbled it, and threw it in the waste basket near her desk, all within the sight and hearing of students.

Ms. Kleinberg then directed the students that they had free time because she had prematurely completed the instruction she had scheduled for that time. Mr. Lobato then advised Ms. Kleinberg to leave the premises. At this point, she asked Mr. Lobato if he was "going to call security?" He nodded and left the room. Ms. Kleinberg left the room.

Throughout this exchange, which lasted from about 11:15 a.m. to 11:35 a.m., Ms. Kleinberg demonstrated a hostile, antagonistic contempt and defiance for legitimate exercise of supervisory authority, was insubordinate in her refusal to continue with her normal class activities, and manifest[ed] conduct unbecoming a teacher and a professional. This conduct started with her ripping her lesson plans and pen from Mr. Lobato's hands and culminated in her threatening to call the police and ripping Mr. Lobato's note paper from him and throwing it away, all within the sight and hearing of students. Her voice and demeanor grew louder and more hostile as the sequence of events unfolded. In contrast, Mr. Lobato remained calm and collected, and manifest[ed] no conduct which could or should have reasonably provoked Ms. Kleinberg's words or actions. Article 9, Section C of the Agreement between APS and AFT Local No. 1420 does *not* require that principals leave a classroom when requested to do so by a teacher.

Following the close of evidence, the local board's deliberations and discussions were appropriately conducted in private. § 10–15–1(E)(2). However, rather than convening in open session for purposes of announcing its decision and vote, the local board on December 16, 1985, issued a written decision confirming the discharge. In its written decision, the local board held that Kleinberg was discharged for good and just cause. Four days later, on December 20, 1985, apparently recognizing

that its failure to announce the vote and decision publicly violated the Act, the local board with appropriate notice, convened an open meeting, at which time Kleinberg's representatives were present. The purpose of the meeting was to vote on Kleinberg's discharge and publicly announce the board's decision. The local board voted to discharge Kleinberg and ratified its earlier written decision.

Kleinberg appealed the local board's decision to the state board. While entitled to a de novo hearing, Kleinberg and APS stipulated that the appeal would be based on the transcript of proceedings before the local board, together with additional exhibits and objections. After a review of the local board's proceedings and consideration of the parties' arguments and authorities, the state board's hearing officer issued a forty-five page report, together with extensive findings of fact and conclusions of law, proposing affirmance of the local board's decision discharging Kleinberg.

Subsequently, the state board adopted the hearing officer's recommendation and held that there had not been a prejudicial departure of statutory or regulatory procedures in the discharge process, and that APS had established that sufficient cause existed for its decision to discharge Kleinberg. The state board affirmed the local board's decision. This timely appeal followed.

OPEN MEETINGS ACT

There has been no fundamental change in the legislative purpose behind the Open Meetings Act. The purpose of the Act is "to open the conduct of the business of government to the scrutiny of the public and to ban decision-making in secret." *Gutierrez v. City of Albuquerque*, 96 N.M. 398, 400, 631 P.2d 304, 306 (1981) (citing *Karol v. Board of Educ. Trustees, Etc.*, 122 Ariz. 95, 97, 593 P.2d 649, 651 (1979)). With few exceptions, the public policy of this state, as expressed in the Act, is to conduct the public's business in the open, allowing persons, so desiring, to attend and listen to the proceedings. § 10–15–1. Local school boards are required to comply with provisions of the Act. *See* § 10–15–1(A).

The exceptions to this general policy are limited to a few categories. § 10–15–1(E)(1). The general provisions of the Act do not apply to:

personnel matters; provided that for purposes of this act, "personnel matters" means the discussion of hiring, promotion, demotion, dismissal, assignment or resignation of or the investigation or consideration of complaints or charges against any individual public employee; provided further that this subsection shall not be construed as to exempt final actions on personnel from being taken at open public meetings; nor shall it preclude an aggrieved public employee from demanding a public hearing[.]

§ 10–15–1(E)(2).

It is clear that a school board's discussions and deliberations concerning a teacher's discharge are not subject to the open meeting requirements of the Act. It is equally clear, however, that the board's "final action" concerning the discharge is to be taken at an open meeting.

There is no contention in the present case, up to the point when the local board issued its written decision, that there was any violation of the Act. Nor is there any claim that the public would have been entitled to witness the discussions and deliberations of the local board as it considered the evidence presented. Had the local board recessed after the presentation of evidence and then reconvened to announce its decision and vote, there would have been no open meeting violation claim. The point of contention deals with the manner in which the "final action" was taken. The local board issued its written decision affirming Kleinberg's dismissal without convening an open meeting and without a public announcement of the vote. Kleinberg argues that the December 16th letter was the "true" final action, and, thus, the decision should have been made in public. The later meeting, argues Kleinberg, was simply a confirmation of the decision which had already been finalized.

The local board argues that there was no violation because "final action" means the *last* action taken. It contends

that since the local board's last action was ultimately to hold a public meeting and to take a public vote, the procedure met the Act's demands. We reject the argument that there was no violation. The local board's argument requires us to unreasonably construe the term "final act".

Construction of the term "final act" to mean the last ministerial act taken could lead to unreasonable, if not absurd, results. For example, following discharge, the issuance of a final check or severance pay could be considered the final act of the local board, or in a hiring decision, execution of a written contract, which may occur substantially after the hiring decision has been made, could be deemed the final action. Under the local board's argument, those final acts would have to be taken at a public meeting. We decline to view the statute so as to require an open meeting to perform a perfunctory or purely ministerial act.

■ Although we reject the local board's argument, it does not follow that we have accepted Kleinberg's view that the violation mandates reversal of the discharge decision. We view the local board's initial action, that is, the private announcement of its decision without recording a public vote, as a violation of the Open Meetings Act. We next consider, however, the effect of the December 20, public meeting, during which the local board voted and announced its decision.

Personnel matters are different from other governmental activities covered by the Act. Deliberations and discussion concerning personnel matters may be held in secret, and the public has no right to watch or participate in the proceedings. § 10–15–1(E)(2). The deliberations in this case were held after a full and fair hearing comporting with due process. The parties were given a full and fair opportunity to present their claims and defenses, and to argue their respective positions. Following the local board's deliberative process, it erred by announcing its decision in private, without a public vote and without holding a public meeting to announce its final action. The local board corrected its procedural error, however, by holding a prompt public meeting, affording appellant an opportunity to be present, and publicly voting on and ratifying its decision to discharge Kleinberg.

*Board of Educ. of the Santa Fe Public Schools v. Sullivan*, Ct.App.Nos. 8924/9314 (Filed April 28, 1987), *rev'd*, 106 N.M. 125, 740 P.2d 119 (1987) involved a similar situation. In *Sullivan*, a local school board conducted a hearing on the principal's recommendation not to re-employ a teacher. After the hearing, the local board recessed for deliberations. Rather than reconvening in an open session for the purpose of taking a final vote and making its decision, the local board there, as in the present case, mailed its decision to the teacher. There was no record of the vote, and neither the teacher nor the public in general was aware how each individual board member voted.

The teacher appealed the local board's decision to the State Board of Education, contending that the local board's failure to convene an open meeting on "final action" violated the provisions of the Open Meetings Act, and secondly, alleging that there was not good cause justifying the board's decision not to re-employ him. Following a de novo hearing, the state board determined that there indeed was good cause for the teacher's discharge, but also concluded that the local board's failure to take final action in an open meeting constituted a prejudicial departure from the Act. Accordingly, the teacher was ordered reinstated.

The local board appealed the state board's determination. While the appeal was pending, the local board sought to cure the procedural defect by conducting an open meeting in compliance with the Act. This time, the local board voted and announced its decision in public and memorialized its decision by a public record. The teacher again appealed to the state board, which concluded that the local board could not cure the prior procedural defect, that the state board's initial decision was res judicata, and that the local board had prejudicially departed from New Mexico stat-

utes. The local board appealed the second decision to this court, and the two appeals were consolidated.

This court held that the Open Meetings Act was applicable to the local board, and agreed with the state board's argument that the local board could not cure the procedural defect and, in effect, decided that the local board was required to follow the Act's procedures correctly the first time, and could not take "two bites at the apple." The court concluded that the same acts of misconduct which had been presented at the first local board hearing could not form the basis of the local board's second determination.

On certiorari, the supreme court reversed holding that the procedural defect could be corrected through a reinstatement of the termination proceedings. The court further noted that, during the proceeding, the local board could rely on the same acts of misconduct that formed the basis of the local board's original decision.

We view *Sullivan* as authority for the proposition that procedural defects in the Open Meetings Act may be cured by taking prompt corrective action. In this case, as in *Sullivan,* the local board recognized that it had made a procedural error by not holding a public meeting to take final action. The local board then held an open public meeting, with notice to appellant, at which time the earlier decision was approved by a vote of a quorum of the school board. This action ensured that a public record of the vote was created. The board members, in full public view, had to vote on their position concerning Kleinberg. In effect, the local board re-opened the termination proceedings, relied on all the evidence adduced at the hearing, and issued a procedurally corrected decision. Under the circumstances of this case, the local board's corrective action was prompt, appropriate and effective. Thus, we conclude that the local board successfully cured its prior error.

This approach is consistent with the view that the legislature did not intend to unduly burden the appropriate exercise of governmental decision-making and ability to act. *See Gutierrez v. City of Albuquer-que.* To rule otherwise would improperly elevate form over substance. The local board, in affording Kleinberg a full and fair hearing in compliance with due process guarantees, and ultimately, in taking a public vote and openly announcing its decision in a forum where the interested public could observe the action, carried out the intent and purpose of the Act. *Id.*

In this case, Kleinberg had a full and fair opportunity to influence the local board's decision by presenting her defense through testimony and evidence, and challenging the claims made by APS. The local board did not deprive her of her opportunity to convince it how to decide the case. Therefore, the local board was entitled to undertake good-faith corrective action once it realized that a procedural error had been committed. We determine that, under the facts of this case, the local board's corrective action was an acceptable remedy for the procedural violation of the Open Meetings Act.

POLICIES AND PROCEDURES

█ Kleinberg asserts that APS breached its contract with her and that this breach deprived her of rights which might have avoided her dismissal. The claimed breach concerns a failure to follow evaluation procedures outlined in the APS manual. Kleinberg argues that she was entitled to be in a joint evaluation cycle and be given assistance to improve her tardiness, poor attitude and inadequate lesson plan problems.

Even if we agreed with Kleinberg's contention that she should have been in another evaluation mode, we fail to see how that contention operates as a defense to the incidents which formed the basis of her termination. At best, we are asked to speculate that had an alternative evaluation process been followed, Kleinberg might have remedied her problems and, that if the problems had been remedied, dismissal might have been avoided. We decline to engage in such speculation.

Our reason for rejecting the argument is twofold. First, such speculation would require us to consider matters outside of the record. This practice is impermissible.

*State v. Romero,* 87 N.M. 279, 532 P.2d 208 (Ct.App.1975). Secondly, assuming Kleinberg's argument that the proper evaluation procedures would have remedied her tardiness, attitude and inadequate lesson plan problems, the argument does not address the problems and incidents on which her discharge was based. In fact, the evidence of misconduct occurring in years prior to 1985–86 was specifically rejected by both the local and state boards in their termination decisions. The problems in school year 1985–86, and specifically the October 2nd incident, were sufficient to sustain the local board's findings. *Cf.* Thus, while Kleinberg's claim of contractual breach may constitute an independent grievance, it does not form the basis of a defense to her discharge.

STATUTORY VIOLATIONS

■ Kleinberg contends that her discharge was based on instances of unsatisfactory work performance instead of insubordination. The contention is crucial, she argues, because if her actions constituted unsatisfactory work performance, she was entitled to conferences with her supervisor and a period of time to improve performance before termination. Failure to provide these conferences is cause for reversal of a discharge. *Board of Educ. of Alamogordo Public Schools Dist. No. 1 v. Jennings,* 98 N.M. 602, 651 P.2d 1037 (Ct.App. 1982); *Morgan v. New Mexico State Bd. of Educ.,* 83 N.M. 106, 488 P.2d 1210 (Ct.App. 1971). The record of proceedings, however, refutes Kleinberg's contention. Her discharge was not limited to unsatisfactory work performance. To the contrary, Kleinberg received both oral and written notice that her suspension and ultimate termination were based on insubordination, conduct unbecoming a teacher, unprofessional conduct and open defiance of supervisory authority. The hearing officer specifically noted that while the charges against Kleinberg could be characterized as unsatisfactory work performance, they were also considered insubordination. We believe the record supports the hearing officer's determination and local board findings that the October 2nd incident, in conjunction with evidence showing Kleinberg's defiant atti-

tude toward Lobato, constituted insubordination and adequate grounds for her discharge.

REFUSAL TO CONSIDER COLLECTIVE BARGAINING AGREEMENT

■ The local board declined to admit into evidence the collective bargaining agreement between APS and the Albuquerque Teachers Federation. Kleinberg argues that the agreement, if admitted, would have allowed her to explain her actions, and she maintains that provisions within the agreement allowed her to request that Lobato leave her classroom on October 2. Further, Kleinberg argues that the agreement prohibited the creation of certain evidence, specifically, informal conference notes kept by Lobato which were admitted at the local board hearing. Thus, Kleinberg's complaint is twofold: (1) had the agreement been admitted, she would have had an opportunity to explain her actions on October 2; and (2) had the agreement been admitted, she would have kept out harmful evidence contained in Lobato's handwritten notes.

Similar to a personnel manual, the collective bargaining agreement governs employer-employee relationships and constitutes part of the employee's contract. *See Vigil v. Arzola,* 101 N.M. 687, 687 P.2d 1038 (1984). We have no dispute with Kleinberg's argument that the collective bargaining agreement was relevant and should have been admitted. Nonetheless, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected. SCRA 1986, 1–061; *Maxwell v. Santa Fe Public Schools,* 87 N.M. 383, 534 P.2d 307 (Ct.App. 1975) (Sutin, J., specially concurring). We are hard-pressed to find that Kleinberg was prejudiced by the exclusion of the collective bargaining agreement. While the local board indicated it would allow the collective bargaining agreement into evidence for a limited purpose only, it nevertheless allowed Kleinberg's counsel to ask questions and to make arguments based on other provisions of the agreement. Moreover, the decision indicates that the local

**46**

board considered and rejected Kleinberg's main argument, that is, whether Art. IX, Section C of the agreement authorized the teacher to exclude a principal from a classroom. Thus, while the local board stated it would limit the admission of the collective bargaining agreement to one purpose, the record confirms that the evidence was not so limited and Kleinberg was allowed to question on other provisions. Secondly, Kleinberg's contention that admission of the collective bargaining agreement would have prohibited admission of Lobato's notes is not persuasive. While the notes were admitted into evidence, the local board specifically indicated that it did not rely on the prior incidents of misconduct in reaching its decision. Accordingly, we determine that the exclusion of the agreement and the introduction of the notes was harmless error. *See* SCRA 1986, 1-061.

## SUFFICIENT CAUSE TO DISCHARGE

Kleinberg raises three contentions with reference to the substance of the local and state boards' decisions. She argues that the local board applied the wrong definition of insubordination; that the decision to discharge was based in large part on evidence from prior school years which should not have been considered; and that there was no evidence of any intentional or willful refusal to obey her supervisor's orders.

■ Kleinberg's first contention is not supported by the record. She contends that the state board should not have used the statutory "good and just cause" basis for discharge because the local board's decision was based only on insubordination. This argument is not supported by the local board's decision. The local board indicated that APS had discharged Kleinberg for good and just cause. Moreover, the notice of discharge did not limit its basis to insubordination, but included conduct unbecoming a teacher, unprofessional conduct, and open defiance of supervisory authority.

Kleinberg further argues that the board wrongfully applied the definition of insubordination found in *McAlister v. New Mexico State Bd. of Educ.*, 82 N.M. 731, 487 P.2d 159 (Ct.App.1971), instead of the more recent and more restrictive definition promulgated by state board SBE Regulation 77-1(III)(c). It is not clear which definition the local board actually used; its decision recites both. The state board, however, relied on the more restrictive definition of insubordination in determining that there was substantial evidence to support the local board's finding. Since there existed evidence supporting a finding of insubordination under the more restrictive definition, Kleinberg's "wrong definition" argument is without merit.

■ Kleinberg also argues that the local board improperly admitted into evidence testimony concerning misconduct which took place prior to the 1985-86 school year and that it improperly considered this evidence in making its decision. Under *Roberson v. Board of Educ. of City of Santa Fe*, 80 N.M. 672, 459 P.2d 834 (1969), limited by the supreme court in *Sullivan*, if a school board knows of misconduct by a tenured teacher but rehires the teacher for the next school year, it cannot rely on the past misconduct as the basis for eventual discharge of the teacher.

*McAlister* allowed the admission of "past acts" only for the purpose of showing that the employee was aware of school policies or procedures and knew that his actions violated such policies. Although both *Roberson* and *McAlister* restrict the use of evidence of "past acts", neither absolutely bars the admission of evidence concerning past misconduct. Thus, the prior misconduct evidence may not be used as the sole basis to terminate a teacher if the local school board was aware of the misconduct and nevertheless rehired the teacher. In the present case, however, both the local and state boards cited the *Roberson* and *McAlister* language in their decisions and indicated that "past acts" evidence was admitted only to show Kleinberg's knowledge that her actions during the 1985-86 school year were unacceptable. This limitation was proper under both *Roberson* and *McAlister*. The evidence was admitted for a specific purpose, and both the local and state boards specifically rejected the past misconduct evidence as the basis for their decision. Finally, there was substantial ev-

idence of present, as opposed to past, misconduct which serves as the basis for Kleinberg's discharge.

 Kleinberg's final argument is a generic claim that there was no evidence of insubordination or misconduct serious enough to warrant the discharge. Reviewing the evidence on the record as a whole, *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 681 P.2d 717 (1984), we disagree. Lobato's testimony regarding the October 2nd, incident supported the local board's decision and the state board's findings of fact. Other witnesses provided testimony indicating that Lobato's version of the events was more credible than Kleinberg's. The local board, as the trier of fact, made credibility determinations. Its factual findings support a conclusion of insubordination or other good and just cause for Kleinberg's discharge. Thus, there was substantial evidence for the local board's decision and the state board's affirmance.

CONCLUSION

Based on the foregoing, we affirm.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.