This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DR. SONIA DIAZ,**

　　　Plaintiff-Appellant,

v.                                                                                    **NO. 28,172**

**BOARD OF EDUCATION FOR THE LAS CRUCES PUBLIC SCHOOLS,**

　　　Respondent-Appellee.

**APPEAL FROM A DECISION OF AN ARBITRATOR**
**Lee V. Vesely, Independent Arbitrator**

Miller Stratvert P.A.
Lawrence R. White
Las Cruces, NM

for Appellant

Cuddy & McCarthy, LLP
John F. Kennedy
Evelyn A. Peyton
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Appellant, Dr. Sonia Diaz, appeals from the decision of an independent arbitrator affirming the decision of the Las Cruces Public Schools Board of Education (the Board) to discharge Diaz from her employment as superintendent of the Las Cruces Public Schools. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Diaz was hired by the Board in late June 2006, under a two-year contract. On November 8, the Board suspended Diaz, and on November 29, the Board served Diaz with notice of intent to discharge pursuant to NMSA 1978, Section 22-10A-27(B) (2003) of the School Personnel Act (the Act). The notice of intent to discharge alleged, among other things, that Diaz was insubordinate and that she had engaged in unprofessional conduct in violation of the code of ethics and standards of professional conduct. Following a two-day hearing at which the Board heard evidence, the Board issued its decision discharging Diaz.

Diaz appealed the Board's decision to an independent arbitrator pursuant to NMSA 1978, Section 22-10A-28(D) (2003) (providing for de novo review by an independent arbitrator of a local school board's decision to discharge a certified school employee); *see also Santa Fe Pub. Sch. v. Romero*, 2001-NMCA-103, ¶ 16, 131 N.M. 383, 37 P.3d 100 (holding that on review, the independent arbitrator must review all relevant evidence and decide whether the board has established by a

preponderance of the evidence that the allegations of misconduct had a basis in fact and whether they constitute just cause for discharge).

At the hearing, the Board presented evidence of the incidents that formed the basis for Diaz's discharge. They occurred over a four-month period and began almost as soon as Diaz began employment with the district. The independent arbitrator's unchallenged findings of fact establish that during this period of time, Diaz initiated a series of incidents in which she publicly berated and humiliated administrators and staff members and that she generally treated her subordinates in an undignified and demeaning manner. Diaz also made inappropriate references to a colleague's weight and physical appearance. Numerous school district administrators and central office staff resigned, either as a result of Diaz's treatment of them or because of an inability to work with her.

The independent arbitrator found that during a severe weather event, instead of handling the crisis, Diaz had a district staff member follow her home so she could put her car in the garage. She returned to the office forty-five minutes after notification of the crisis, and by that time the crisis had been handled by the administrative crisis team. The independent arbitrator also noted Diaz's deficiencies in complying with purchasing regulations and procedures.

Additionally, there was evidence regarding Diaz's conduct with respect to

3

instituting a new reading program in the district. Soon after she started, Diaz began preparations to implement the new reading program. Implementation of the program in the middle of the year would cost an estimated $900,000, a substantial sum of money which the district did not have. At a work session with Diaz on October 24, the Board requested assurances from Diaz that other areas of the budget or school programs would not be impacted adversely by implementation of the new reading program. The Board also expressed concerns regarding the cost of the new reading program and questioned why it should be implemented in the middle of the year. There was evidence that it was clear to Diaz following the work session that the Board did not want her to implement the new reading program. Immediately following the work session, Diaz told a staff member "[t]o hell with them. I'm doing it anyway."

The independent arbitrator made over eighty findings of fact. His conclusions can be divided into three categories. As to the severe weather event and non-compliance with district purchasing requirements, the independent arbitrator concluded that Diaz's conduct in this regard was unsatisfactory work performance that should be addressed through a performance development process before service of a notice of intent to discharge.

In the second category, the independent arbitrator determined that Diaz's actions with regard to the reading program constituted insubordination. In the third

4

category, the independent arbitrator collectively described certain of Diaz's conduct as her leadership style, and he concluded that her leadership style amounted to unprofessional conduct establishing just cause for discharge as well as unsatisfactory work performance. The arbitrator further concluded that no performance development process was required to improve Diaz's leadership style because such requirement would be impractical, fraught with the likelihood of further destroying morale, and could result in the loss of strong key employees.

Based on the findings and conclusions, the independent arbitrator affirmed the Board's discharge of Diaz.  This appeal followed.

## II.    DISCUSSION

When reviewing an independent arbitrator's decision to affirm the discharge of a certified school employee under the Act, we determine whether substantial evidence supports the independent arbitrator's findings of fact, and we review the arbitrator's conclusions of law de novo. *See Bd. of Educ. v. Harrell*, 118 N.M. 470, 486, 882 P.2d 511, 527 (1994) (holding that substantial evidence review of the findings of fact and de novo review of questions of law satisfy due process under compulsory arbitration statutes).  Diaz makes two challenges to the independent arbitrator's determination.  First, she asserts that there was insufficient evidence to support the independent arbitrator's conclusion that she was insubordinate.  Second,

Diaz contends that the independent arbitrator was correct in describing her leadership style as unsatisfactory work performance, and she argues that she was entitled to work conferences directed toward improvement before any discharge. We address these issues in reverse order.

**A.    Leadership Style**

Diaz claims that although the independent arbitrator described her leadership style as unprofessional conduct, he also concluded that her style constituted unsatisfactory work performance, and as such, Diaz asserts that she was entitled to at least two work conferences with her supervisor before being served with a notice of discharge. *See* NMSA 1978, § 22-10A-30 (2003) (mandating that the state board prescribe regulations and procedures for correcting unsatisfactory work performance prior to discharge of a certified school employee); 6.69.2.8(B)(1) NMAC (requiring the local school board or governing authority to hold two or more work conferences to correct unsatisfactory work performance prior to serving notice of intent to discharge under Section 22-10A-27). Diaz claims that, because she was denied the conferences, we must reverse. *See Kleinberg v. Bd. of Educ.*, 107 N.M. 38, 45, 751 P.2d 722, 729 (Ct. App. 1988) (stating that the failure to provide required work conferences is a basis for reversal, except in cases of unprofessional conduct or insubordination).

"Whether the conduct complained of is unsatisfactory work performance depends upon the particular facts." *Board of Educ. v. Jennings*, 98 N.M. 602, 609, 651 P.2d 1037, 1044 (Ct. App. 1982) (internal quotation marks and citation omitted), *overruled on other grounds by Board of Educ. v. New Mexico State Bd. of Educ.*, 106 N.M. 129, 129-30, 740 P.2d 123, 123-24 (Ct. App. 1987). Unsatisfactory work performance is defined as "failure by licensed school personnel to satisfactorily perform those tasks which are evaluated by the employee's supervisors, pursuant to the school district's approved plans [] for evaluation and supervision of its licensed employees." 6.69.2.7(D) NMAC. Diaz likens her leadership style and its effects to sexual harassment, a form of conduct determined to be unsatisfactory work performance in *Jennings*, 98 N.M. at 609, 651 P.2d at 1044 (determining that sexual harassment allegations against a school principal involved unsatisfactory work performance and that he was therefore entitled to work conferences). *See* 6.60.9.9(C)(10) NMAC (defining sexual harassment of a school employee as a violation of the standards of professional conduct).

The Board argues that Diaz's leadership style was properly described as unprofessional conduct and provided just cause for discharge. The New Mexico Public Education Department has established minimal standards of ethical behavior and professional conduct applicable to all licensed school personnel and

7

administrators. *See* 6.60.9.2 NMAC; 6.60.9.10 NMAC. The code of ethics requires, in part, that educational professionals "participate and conduct [themselves] in a responsible manner in the development and implementation of policies affecting education" and "accord just and equitable treatment to all members of the profession in the exercise of their professional rights and responsibilities." 6.60.9.8(C)(2), (C)(4) NMAC. Under the standards of professional conduct, educators and administrators "shall not knowingly make false or derogatory personal comments about an educational colleague," "shall avoid conduct connected with official duties that is unfair, [or is] improper, illegal or gives the [impression] of being improper or illegal," and "shall not . . . while representing the school . . . engage in . . . abusive . . . conduct." 6.60.9.9(C)(7), (C)(9), (C)(20) NMAC.

The Board directs us to the Act, the definition of just cause, and code requirements for failure to comply. Pursuant to the Act, a local school board may discharge a certified school employee only for "just cause." *See* § 22-10A-27(A). "Just cause" is defined as "a reason that is rationally related to an employee's competence or turpitude or the proper performance of the employee's duties and that is not in violation of the employee's civil or constitutional rights." NMSA 1978, § 22-10A-2(G) (2007). Under the code section entitled "Failure to Comply with Code," there is language stating that the public education department (PED) "finds that

8

adherence to this code of ethical responsibility has a significant bearing on licensed personnel's competence, turpitude or the proper performance of their duties." 6.60.9.10 NMAC. Therefore, according to the Board, failure to comply with the code is unprofessional conduct which provides just cause for discharge.

While we agree that unprofessional conduct can establish just cause for discharge, the inquiry does not end there. Section 22-10A-30 and Regulation Section 6.69.2.8(B)(1) NMAC establish a process allowing certified school personnel to correct unsatisfactory work performance before discharge. Deficient performance would include violations of the code of ethics when that conduct is unsatisfactory work performance. Consequently, we must also address the independent arbitrator's further conclusions that Diaz's leadership style was unsatisfactory work performance, but that no work conferences were required because of impracticality and likely detriment to the district.

Although the Board appears to agree that Diaz's leadership style was unsatisfactory work performance, it argues, without citation, that the Board was not required to place Diaz on a growth plan for her conduct. Diaz argues that there is no authority in statute or regulation allowing the independent arbitrator to waive the requirement for work conferences before discharge. We agree. We understand the basis for the arbitrator's conclusion, but there is no legal authority allowing such

9

waiver. *See Morgan v. N.M. State Bd. of Educ.*, 83 N.M. 106, 109, 488 P.2d 1210, 1213 (Ct. App. 1971) (reversing the discharge of a teacher for failure to provide work conferences prior to the discharge). Section 22-10A-30 directs the PED to establish procedures for correcting unsatisfactory work performance before notice of intent to discharge is served. 6.69.2.6-8 NMAC establishes the procedures. Only "insubordination or conduct deemed to be outside the normal scope of duties of licensed school personnel" are exempt from the requirement of at least two conferences, time to correct deficiencies, and a written record of the process. 6.69.2.7(D) NMAC. Once the arbitrator determined that Diaz's leadership style was unsatisfactory work performance, Diaz was entitled to work conferences and time to improve her performance before service of notice of intent to discharge.

**B.     Insubordination**

We turn now to the evidence underlying the independent arbitrator's conclusion that Diaz was insubordinate. "Insubordination" is defined as "actual or implied willful refusal to follow written policies, regulations, rules, or procedures established by the public education department (PED), the local school board, or administrative authorities, or the lawful written or oral orders, requests or instructions of administrative authorities." 6.69.2.7(B) NMAC. Diaz argues that there was no evidence of insubordination severe enough to warrant her discharge. She contends

10

there is no basis for insubordination because she took no further action to implement the reading program after the work session, and in fact she could not have done so because she was suspended by the board four days later. We disagree with both contentions.

In the time before the work session, Diaz had begun the implementation of the new reading program despite the district's serious financial situation. She had tried to secure funding for the program, although her efforts had not proven fruitful. At the work session on October 24, the Board clearly expressed its concern about implementation of the program, and Diaz was on notice that she was to take no further action regarding the program's implementation. While the evidence supports Diaz's contention that she was not able to take financial steps to continue implementation because of her suspension, the record does reflect other conduct. Diaz's comment following the work session establishes a willful refusal to follow the board's wishes with respect to the reading program. *See* 6.69.2.7(B) NMAC (defining insubordination as actual or implied willful refusal to follow lawful orders of the administrative authority). Accordingly, we hold that the evidence was sufficient to support the independent arbitrator's determination that Diaz engaged in insubordination with regard to the reading program. *See Kleinberg*, 107 N.M. at 45, 751 P.2d at 729 (holding that the evidence was sufficient to establish insubordination

11

based on the teacher's defiant attitude towards the principal and refusal to follow his instructions).

Because Diaz's discharge was based not only on unsatisfactory work performance but also on the charges of insubordination, this case is factually analogous to and controlled by *Kleinberg*. *Id.* Multiple grounds including unsatisfactory work performance, insubordination, conduct unbecoming a teacher, unprofessional conduct and open defiance of supervisory authority were cited as the basis for the discharge of the teacher in *Kleinberg*. *Id.* Similar to Diaz's argument in the case before us, the teacher in *Kleinberg* argued that, because her discharge was based on unsatisfactory work performance, she was entitled to conferences and, as she had not been extended this opportunity, she was entitled to reversal of the discharge. *Id.* We rejected this contention and observed that the charge of insubordination was itself an adequate basis for the discharge. *Id.* We reach the same conclusion here.

## III.   CONCLUSION

We affirm the independent arbitrator's determination that the school board had just cause to discharge Diaz.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

12

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**